NICHOLAS L. DASHIELL *vs.* GEORGE R. GRIF-
FITH AND CAROLINE GRIFFITH.

*Expert Evidence—Liability of Physicians and Surgeons for Negli-
gence in the Treatment of Patients—Office Patients—Action by
Husband and Wife for Injury to Wife—Appeal.*

The ruling of the trial Court upon the competency of a witness to tes-
tify as an expert is subject to review on appeal.

In an action against a physician for alleged negligence in the treatment
of a bone-felon on plaintiff's finger, a woman who nursed the plain-
tiff, and whose only qualification, to speak as an expert, was that
she had nursed some twenty cases of bone-felons, is not competent
to testify as to the depth of the incision made by the defendant in
lancing the finger of the plaintiff from mere observation by the wit-
ness of the surface appearance of the finger afterwards.

A physician or surgeon is bound to exercise in the treatment of his
patients such degree of care and skill as is ordinarily exercised by
others in his profession.

The relation of physician and patient generally continues so long as
medical attention is required, and the physician must exercise
reasonable care in determining when the attendance may be safely
discontinued.

But when the patient comes to the office of the physician, from whom
he receives proper treatment, and then fails to return for further
treatment, in consequence of which he suffers injury, he is not en-
titled to maintain an action against the physician for such injury.

An action was brought by husband and wife jointly against a physician,
the declaration alleging negligence in the treatment of a bone-felon
on the wife's finger, in consequence of which amputation of the
finger became necessary, whereby she was injured "to the damage
of the plaintiffs." The wife came to defendant's office on February
17, 18, 19, 20 and 22, and her finger was lanced by the defendant on
Feb. 17. On account of the illness and death of defendant's father,
he did not see the plaintiff after February 22, but she was told to go
to another physician, who was in charge of defendant's practice.
Plaintiff did not go to this physician, and her finger was amputated
on March 2. *Held,*

1st. That if defendant exercised reasonable skill in the treatment of
plaintiff's finger on the days named and requested her to go to the

physician in charge of his practice for further treatment, which plain-
tiff refused to do, then the defendant is not liable for any injury re-
sulting from subsequent neglect to be treated.

2nd. That under the pleadings, the plaintiffs cannot recover damages
for the failure of the defendant to be present in his office after Febru-
ary 22 for the rendition of services to the wife, because, even if de-
fendant was bound to be present, his failure to perform this duty was
a breach of contract, which cannot be sued for by husband and wife
jointly, and because the declaration in this case was founded upon
the allegation of actual negligence.

Appeal from the Baltimore City Court. At the trial the
plaintiff offered the following prayers :

*Plaintiff's 1st Prayer.*—If the jury find from the evi-
dence that the defendant was a physician and surgeon, and,
as such, undertook to treat the plaintiff, Caroline Griffith,
for a disease of her finger, and entered upon said treat-
ment; that said finger was subsequently amputated, and
that said amputation was rendered necessary by the want
of such reasonable skill, care and diligence in the treat-
ment of said finger and of the said plaintiff, as is usually
exercised by physicians and surgeons in good standing in
the defendant's school of practice in this locality, then their
verdict must be for the plaintiff. (Granted in connection
with defendant's prayers).

*Plaintiff's 2nd Prayer.*—If the jury find from the evi-
dence that the defendant undertook the treatment of the
plaintiff, Caroline Griffith, and that she came to his office
for said treatment whenever directed to do so by him, then
it was the duty of the defendant to continue said treatment
so long as the case required medical attention, or else to
give notice of his intention to discontinue the same ; and if
the jury find that the defendant failed to perform said duty
and that injury resulted to the plaintiff from said failure,
then their verdict must be for the plaintiff, and in consider-
ing whether or not the plaintiff's finger required medical
attention, the criterion by which to judge is whether or not
said finger would have required said attention in the judg-
ment of a reasonably skillful, careful and diligent physician.
(Refused).

*Plaintiff's 3rd Prayer.*—If the jury find that the defendant was guilty of negligence and want of such care in the treatment of the plaintiff as would be exercised by a reasonably skillful and prudent physician, and that said negligence and want of care resulted in injury to the plaintiff, then they must find for the plaintiff, even though they should further find that the plaintiff subsequently failed to obey the defendant's instructions in not going to see Dr. Cockrell; and if they shall find that the plaintiff failed to obey the defendant's instructions as aforesaid, and that said failure contributed to the injury, this is to be considered merely in mitigation of damages, and not as a bar to the plaintiff's right to recover. (Refused).

*Plaintiff's 4th Prayer.*—If the jury find for the plaintiff on the foregoing instruction, then the plaintiff is entitled to such damages as will be a reasonable compensation for the loss of her finger, the inconvenience and disfigurement resulting from the same, and for the mental and physical pain resulting from the said want of skill, care and diligence on the part of the defendant. (Granted).

And the defendant offered the following four prayers :

*Defendant's 1st Prayer.*—If the jury find from the evidence that the plaintiff, Mrs. Griffith, came to the defendant on Feb. 17th, 1895, to be treated for a bone-felon, and that she returned on the 18th, 19th, 20th and 22nd of February, and was treated on all of said days for said disease, and that the said plaintiff did not see the defendant after the 22nd until after the amputation of her finger, then the jury are instructed that, in order to find a verdict for the plaintiff for the said amputation, they must find, under the pleadings, that the condition of her finger which made such amputation on March 2nd necessary, resulted from a disease which would have been cured by the exercise of ordinary and reasonable care on the part of the defendant on the aforesaid days, when he so treated the plaintiff, and not from any negligence of the said plaintiff after February 22nd, directly contributing thereto ; and the jury are fur-

ther instructed that the burden of proof is on the plaintiff
to prove the negligence of the defendant, and it is not per-
missible for them to infer negligence of the defendant,
merely from the bad condition of the finger of the plaintiff
on or about the time of the amputation, apart from the
other circumstances of the case. (Refused).

*Defendant's 2nd Prayer.*—If the jury find from the evi-
dence that the plaintiff, Mrs. Griffith, came to the office of
the defendant on Feby. 17, 1895, to be treated as an office
patient, for a bone-felon, and returned to the office every
day thereafter, except Wednesday, Feby. 20th, to Friday,
Feb. 22nd, inclusive, and was treated by the defendant on
said days for said disease, and that the said plaintiff did not
see the said defendant after the 22nd of February for treat-
ment; and if they further find that the defendant was ab-
sent from his office and did not attend to his professional
work after the 22nd of February, because he had been
summoned to the bedside of his father, who was danger-
ously ill, and that from Feb. 23rd until after the amputa-
tion of the plaintiff's finger on March 2nd, he remained in
constant attendance upon his father until his death, and
after the death, in attendance upon his father's funeral; and
if they further find that he made arrangements on Feb.
24th to have all his patients treated by another competent
physician, and to have all so notified who came to his office
for treatment, then the jury are instructed that, in order to
find a verdict for the plaintiff for said amputation, they must
find, under the pleadings, that the condition of her finger
which made such amputation on March 2nd necessary, re-
sulted from a disease which would have been cured by the
exercise of ordinary and reasonable care and skill on the
part of the defendant, on the aforesaid days when he so
treated the plaintiff, or from neglecting to treat the plaintiff
up to and including Feb. 24th, and not from any negli-
gence of said plaintiff after Feb. 24th, directly contributing
thereto; and the jury are further instructed that the bur-
den of proof is on the plaintiff to prove the negligence of

the defendant, and it is not permissible for them to infer negligence of the defendant merely from the bad condition of the finger of the plaintiff on or about the time of the amputation, apart from the other circumstances of the case. (Granted).

*Defendant's 3d Prayer.*—If the jury find from the evidence in this case that the injury complained of was in any degree owing to the want of due care and caution on the part of the plaintiff, Mrs. Griffith, directly contributing to said injury, then their verdict must be for the defendant. (Refused).

*Defendant's 4th Prayer.*—Notwithstanding the jury may believe from the evidence that the defendant was guilty of negligence, yet if they shall further believe from the evidence that the plaintiff, Mrs. Griffith, was also guilty of negligence, and that the injury was directly caused partly by the defendant's negligence and partly by the negligence of the plaintiff, Mrs. Griffith, then the verdict of the jury must be for the defendant, without regard to whose negligence was the greater. (Granted).

The Court below (PHELPS, J.) granted the plaintiff's first and fourth prayers and defendant's second and fourth prayers, and refused to grant defendant's first and third prayers. The jury returned a verdict for the plaintiff for $300.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, ROBERTS and BOYD, JJ.

*Arthur W. Machen* and *Edgar H. Gans*, for the appellant.

As part of the plaintiff's case, Ella La Rose was called, who had nursed the plaintiff in her sickness. And she testified, against the objection of the defendant, that in her *opinion* the finger was not cut to the bone, because when an incision is deep the flesh always lies open. The depth of the incision made by the lancing was one of the main questions of fact in the case. The plaintiffs charged that the

negligence of the defendant consisted in not cutting the finger down to the bone, through the periosteum, under which they alleged that the poisonous pus collected in ordinary cases of bone-felon, and it was this neglect in not cutting through the periosteum and in not liberating the pus which the plaintiff claims caused the necrosed condition of the finger which made the amputation necessary.

The defendant offered evidence tending to show that the plaintiff, Mrs. Griffiths, came to his office as an office patient on Sunday, February 17th, and he examined the finger, cleansed it and told her to come back the next day; that on the following day, Monday, February 18th, he lanced it, cutting down through the tissues to the bone, and gave other treatment; that the plaintiff came again on Tuesday, February 19th, and the finger was doing well, and that she also came on Thursday, February 21st, and Friday, February 22d, on which days the finger was doing nicely, and he gave her treatment; that he did not lance the finger again, as the first lancing was sufficient, and cut through to the bone, and properly done; that on February 23, Saturday, he received a message that his father was very ill, and he immediately abandoned his practice and spent his time entirely from that day at his father's bedside until he died on Thursday, March 7th; that he made arrangements to have all his patients treated by Dr. Cockrell, a competent physician, of which the plaintiff had notice; that he did not see the plaintiff after Friday, February 22d, until some time after the amputation. The defendant also offered evidence tending to show that the condition of the finger which made amputation necessary on March 2 might have been caused by not having it treated after February 22, and also offered evidence tending to show that this bone-felon was incurable.

One of the main questions in the case being the depth of the incision made by the defendant, the plaintiff produced a woman, who was an ordinary nurse, called in on the very day of the incision, and who from that time nursed the

plaintiff. There had been no evidence offered by the plain-
tiff as to the depth of the incision, except that when the
finger was cut no pus escaped. This nurse, Mrs. La Rose,
was asked about the size of the incision, and she gave her
*opinion*, against the defendant's objection, that the incision
was only half way down to the bone, because when an
incision is deep the flesh always lies open. The defendant
objected to this testimony because the witness had not been
shown to be an expert. The only proof offered of her being
an expert was that she had nursed a number of bone-felons,
probably 20 or 30, and thought she had enough experience
to give an opinion as to the depth of an incision from the
size of the opening. The importance of this question can
be seen from the fact that this opinion, admitted by the lower
Court against the defendant's objection, with the exception
of the evidence that pus did not escape, *was the only evi-
dence* offered by the plaintiff as to the depth of the incision.
There can be no doubt that the determination of the depth
of a cut by the appearances on the surface of the incision is
a medical question requiring special medical knowledge and
training. In this case the theory of the plaintiffs was that
the defendant did not cut or incise the finger through the
periostum or lining membrane of the bone. In order to
prove that such incision had not been made they ask Mrs.
La Rose her opinion, and that opinion is founded entirely
on the fact that the wound was not open enough. How far
open must a wound be at the surface to show a particular
depth of the incision? This is a very nice question in sur-
gery and is dependent on many circumstances, such as the
condition of the flesh at the time of cutting, the nature of
the instrument, the clotting of blood, the effect of washing
the wound with any adhesive ointment, the manner of mak-
ing the incision itself. Now, the competency of Mrs. La
Rose as an expert on the question was objected to by the
defendant, and the burden of proof was put on the plaintiff
to establish her competency as an expert. *Greenleaf Evi-
dence,* sec. 440, note c; *Perkins* v. *Stickney,* 132 Mass. 217;

*Nunes* v. *Perry*, 113 Mass. 276; *Slocovich* v. *Orient*, 108 N. Y. 61.

The only proof is that she is a nurse, and had nursed twenty or thirty cases of bone-felon where the finger had been cut. There is no proof that she was a trained nurse, or that she ever saw an incision made, or had ever before examined the question of the depth of incisions from surface indications. There is no proof that she ever studied medicine or even elementary surgery, or that she had any knowledge of wounds. She nursed cases where incisions had been made, but whether these incisions were of considerable length, in what part of the finger, the condition of the finger, the character of the felon; whether a surface one, or deep in the tissue near the bone, does not appear. We submit, therefore, that the question is one requiring medical knowledge and skill in its determination, and that the witness has not been shown to have either the scientific knowledge or skill to entitle her to express an opinion. *Caleb* v. *State*, 39 Miss. 732; *Rash* v. *State*, 61 Ala. 89, 91; *State* v. *Cross*, 68 Iowa, 191; *Davis* v. *State*, 38 Md. 37; *Rodger's Expert Testimony*, sec. 52, page 125*.

The second exception arises from the refusal of the Court to grant the defendant's first prayer. The Court will remember that, from the evidence of the defendant, the plaintiff came to his office, as an office patient, on February 17, 18, 19, 20 and 22d, and that he did not see her at all after the 22d. The purpose of the first prayer was to declare that, *under the pleadings*, the defendant could be held liable only for improperly treating the finger on the five days above mentioned, and not at all for any failure to treat the plaintiff after the 22d. There was evidence to show that the condition of the finger, which made amputation necessary on March 2, might have well been caused by the finger not being treated at all after February 22d, and this failure on the part of the plaintiff to have the finger treated by some other physician might not have been negligence on the part of the plaintiff, as she might have been ignorant of the ne-

cessity of having it further treated, or may have relied from day to day on the expectation of seeing the defendant again and have him continue his treatment. The second prayer does not cover the same ground, for by that prayer the jury were obliged in addition to believe: 1. That the condition of the finger might have been caused by failure to have it treated after *February 24th*. 2. That the defendant was absent from his office because of the illness of his father from February 22d. 3. That he made arrangements to have his patients treated by another competent physician. 4. That he made arrangements to have all his patients notified as to the other physicians.

All these special circumstances of excuse for not being at the office the jury were obliged to find, in order to find for the defendant under this prayer, and then also that the condition of the finger might have been caused by want of treatment after February 24th, two days later than the date fixed by the first prayer. This was necessary, as the plaintiff, according to the proof of defendant, was not notified of the arrangement as to the other physician until February 24th. So that it is clear that the second prayer is substantially different from the first prayer, and the granting of the second did not give the defendant the benefit he sought under the first.

The theory of the first prayer is that there was no duty on the part of the defendant to remain in his office to treat office patients, and if there were, it was a duty arising out of contract, and the failure to perform it at all would be the mere omission to perform a contractual obligation, which could not be sued for in this action. 1. Some authorities cited by the plaintiffs show that where a physician is attending a patient at the patient's home and has regularly entered upon the treatment of the case he cannot stop the treatment without some good reason and without notifying the patient. But there is no authority which declares that a physician is bound to remain in his office to meet office patients who may come in at any time or may not

come at all.   2. There is nothing in the declaration found-
ing the cause of action upon the mere failure of the de-
fendant to treat the plaintiff after February 22.   The decla-
ration is founded upon actual misfeasance, negligence and
want of skill in the treatment itself.   It is well settled that
upon such a declaration no recovery can be had for mere
non-attendance of physicians.   *Bemus* v. *Howard*, 3 Watts
(Pa.), 255.   3. This action is brought by husband and
wife jointly for the actual tort done to the wife, in accord-
ance with the decisions in *Wolf* v. *Bauereis*, 72 Md. 481 ;
*N. C. R. R.* v. *Mills*, 61 Md. 355 ; *B. C. P. R. R. Co.* v.
*Kemp*, 61 Md. 74.

Now, though husband and wife may join in an action for
actual tort to the wife, they cannot join when the cause of
action is a mere non-performance of a duty imposed by
contract.   The contract of employment of a physician to
attend the wife is the contract of the husband, and upon a
failure to perform the duty at all founded on the contract,
the cause of action is entirely in the husband.   Actual
negligence in the performance of the duty, even though
founded on contract, is a tort for which both sue.   Mere
non-performance is not a tort and gives rise to no cause of
action in which the wife could properly be made party
plaintiff.   The prayer refers especially to the pleadings in
the case.   The only cause of mere non-performance of a
duty growing out of contract, being torts, are in the public
duties of inn-keeper and common carrier.   *Pollock on Torts*,
ch. 13, sec. 1, pages 479–81 (4 ed.).   *Courtenay* v. *Earle*,
10 C. B. 73.   The declaration in this case being confined
to one allegation of active misfeasance, and there being no
liability on the part of the defendant to husband and wife
to attend her for any definite time, it seems clear that
under the pleadings the plaintiffs could not recover for
any injury which happened to the wife by reason of the
non-attendance of the defendant upon her after Feb. 22.

Upon the question of contributory negligence counsel
cited : 14 *Am. & Eng. Ency.*, p. 81; *Lower* v. *Franks*, 115

Ind. 334 ; *Chamberlain* v. *Porter,* 9 Minn. 260 ; *Potter* v.
*Warner,* 91 Pa. St. 362 ; *Reber* v. *Herring,* 115 Pa. St. 599.

*Edward C. Eichelberger* and *W. H. DeC. Wright,* for the
appellees.

It is claimed by the appellant that no sufficient founda-
tion was laid to admit the opinion of the witness, La Rose,
as an expert, but it is submitted that, considering the simple
matter on which said opinion was given, the evidence of her
previous experience was ample foundation.    " An expert is
defined to be a person that possesses peculiar skill and
knowledge upon the subject-matter that he is required to
give an opinion upon."   *State* v. *Phair,* 48 Vt. 366, 377.
Such skill and knowledge may be acquired by *experience.*
*Hyde* v. *Woolfolk,* 1 Iowa, 159, and *Doyle* v. *Johnson,* 50
N. H. 452, where the testimony of a witness was excluded
chiefly because he had no practical experience.

Whether a witness is qualified to testify as an expert is a
question of fact for the presiding Judge, and his decision of
such a question is usually final.   *Fayette* v. *Chesterville,* 77
Me. 33.    Unless it appears that there was no evidence of
such qualification, the admission of the witness will not be
reviewed by the Appellate Court.   1 *Greenleaf Ev.,* sec.
440, note ; *Sorg* v. *First German Congreg.,* 63 Penn. St.
156, 161.    The question did not call for the opinion of the
witness as to the proper treatment, but simply as to the
depth of the incision made by the defendant when he
lanced the plaintiff's finger.   This was a question of fact,
of observation, a matter on which any person of common
intelligence having observed incisions of like character,
would be competent to give a rational opinion.   The next
exception was to the granting of the appellee's first prayer.
This embodies such a well-known rule of law as to scarcely
call for any citation of authority.   *Cooley, Torts,* 648 ;
*Shearman & Redfield on Negligence,* sec. 607 ; *Carpenter* v.
*Blake,* 75 N. Y. 12.

The appellee's fourth prayer merely states the general

rule of damages in actions for negligence. Compensation for disfigurement or mutilation, or the mortification resulting therefrom, may be recovered in such actions. 1 *Sedgewick on Damages*, sec. 47 ; *Sherwood* v. *Chicago & W. M. Ry. Co.*, 82 Mich. 374. In the case last cited the Court holds that compensation may be recovered for the personal inconvenience and disfigurement or permanent annoyance which is liable to be caused by the deformity resulting from the injury.

To the rejection of appellant's first prayer exception was also taken. One of the features of the alleged negligence of the appellant was his abandonment of this case and failure or refusal to treat the appellee when she presented herself at his office on the last two days, February the 28th and 29th, and his failure to give her notice to go to another physician. This prayer would in effect instruct the jury that in order to find for the plaintiff they must find that the injury resulted from disease which would have been cured by the exercise of ordinary and reasonable skill and care on the part of the defendant on the days when he so treated the plaintiff, and says nothing of any liability of the defendant for abandonment of the case.

Passing the question as to what difference in the rights of the parties was caused by the fact of appellee's undergoing treatment at his office instead of at her home, the appellant was bound, in the absence of any special agreement, to give the case his continued attention so long as the same might be necessary, unless he gave notice of his intention to discontinue his treatment or was dismissed by the appellee, and he was bound to use ordinary skill and care in determining when his attendance should cease. *Potter* v. *Virgil*, 67 Barb. 578, 580 ; *Lawson* v. *Conaway*, 37 W. Va. 159, 168 ; *Ballou* v. *Prescott*, 64 Me. 305, 313, etc.; *Barbour* v. *Martin*, 62 Me. 536, 539.

Could the mere fact of the appellee's undergoing treatment at the office of the appellant instead of at her home have impaired her rights in any way. The appellee's evi-

dence tended strongly to show that Mrs. Griffith went to
the office of the appellant on Sunday, Feb. 17th, and on
the 18th, 19th, 21st, 22nd, 23rd, 24th and 25th ; on Monday,
the 25th, she was told to return on Wednesday, 27th, if the
finger was very painful, but not otherwise.   She did not go
on Wednesday, as the pain was not so great, but went on
Thursday, the 28th, and Friday, the 29th ; on neither of
said last two days did she see the appellant, nor according
to her testimony was she notified to go to another phy-
sician.

It is submitted that the mere fact of the appellee under-
going treatment at the office of the appellant instead of at
her own home did not in any way lessen her right to a con-
tinued course of treatment, particularly when the appellant
instructed her to come to his office on Wednesday, the 27th,
if the finger was very painful, and knew that, as he had
been her regular physician for eight or nine years prior,
she would undoubtedly look to him and him only for
treatment and was acting entirely under his orders as to
the treatment and frequency of her visits.   It is stated that
the rule requiring a physician, when called to attend a
patient, to give his continued attention, is founded on neces-
sity.   That, were it not for this rule, a physician might
amputate a limb and then abandon the case, leaving the
patient to stop the flow of blood as best he could.  2 *Shear-
man & Redfield on Negligence*, sec. 613.

The same reasoning would impose on the appellant a
duty to continue his treatment of the appellee in this case,
or else to give her notice of his intention to discontinue the
same.   Furthermore, the said prayer states the law to be,
that although the appellant was guilty of negligence in his
treatment of the appellee, and that negligence was a direct
cause of the injury, yet if the appellee was guilty of any
negligence, after the appellant ceased to treat her, directly·
contributing to the injury, she could not recover, whereas
the true rule is that if the jury should find the appellant
guilty of negligence in his treatment, and that said negligence

resulted in injury to the appellee, then any subsequent negligence of the appellee after said treatment ceased should be considered merely in mitigation of damages. *Du Bois* v. *Decker,* 130 N. Y. 325 ; *S. C.,* 27 Amer. St. Rep. 529 ; *Lawson* v. *Conaway,* 37 West Va. 159 ; *S. C.,* 38 Amer. St. Rep. 17. Special attention is respectfully called to these two cases, as in them prayers were held bad, which in this respect were almost identical with the appellants.

ROBERTS, J., delivered the opinion of the Court.

This appeal is from the judgment of the Baltimore City Court. The facts are, that Mrs. Griffith, one of the plaintiffs and wife of the other, was suffering from a disease commonly known as bone-felon, which was upon the index finger of her right hand. She visited the office of the defendant, a practicing physician, for the purpose of obtaining his professional assistance ; he gave the plaintiff medical attention as hereinafter stated ; this action is brought by plaintiffs, *jointly as husband and wife,* to recover damages for the alleged negligence of the defendant in the treatment of the plaintiff, in consequence of which, it is claimed, the wife was obliged to have a portion of her finger amputated.

In the progress of the trial in the Court below the defendant reserved two exceptions, the first of which relates to the admissibility of certain proof ; the other, to the refusal by the Court to grant the defendant's first prayer. We will consider the exceptions in the order in which they appear in the record. The plaintiffs proved by Mrs. La Rose that she had nursed the plaintiff in her sickness whilst suffering with the bone-felon, and went to her as nurse on the 17th of February, 1895, which was the day the finger was lanced by the defendant ; that the incision made in the finger was a little over a quarter of an inch in length upon the surface, and then witness proceeded to say, " When an incision is deep it always lays open." This statement was objected to by the defendant, on the ground that such testimony was not legally admissible unless it be shown that witness was

an expert and competent to testify in that character.    For the purpose of ascertaining whether the witness was qualified to speak as an expert, she was asked, "how many cases of bone-felon she had nursed when the diseased part has been lanced or opened." She replied, "that she might have nursed twenty or thirty cases;" and added, "that she thought she had sufficient knowledge to give an opinion as to the depth of an incision from the size of the opening." To the competency of the witness to testify as an *expert* upon the question of the depth of the incision from the size of the opening the defendant objected, but the Court overruled the objection and permitted the witness to testify as an *expert*.

The question presented by this exception is, we think, free of serious difficulty.    The nurse who testified in this case had no other qualification entitling her to speak as an expert, than that she had nursed twenty or thirty cases of bone-felon where opening or lancing had been resorted to, and from the experience gained thereby, she thought she had sufficient knowledge to enable her to say as an expert, "that in her opinion the finger was not cut half way to the bone." This wound did not "lay open," and there is nothing in the testimony which shows that she probed the wound or gave to it any internal examination.    She simply saw that it was not open at its surface, and then indulged in the merest speculation as to its depth.    It seems to us that if she had been a thoroughly skilled and competent expert, she would, under the existing circumstances of this case, have hesitated to express an opinion as to the depth of the incision made by the defendant.    It is an unsafe practice in the admission of testimony to allow witnesses to speak as experts unless the Court is well satisfied that they possess the requisite qualifications ; not alone on this account, but the effect of such testimony is most difficult to estimate, from the fact that undue importance not infrequently attaches to it and gives to it an influence upon the minds of a jury to which it is not fairly or reasonably entitled.   An eminent

author upon the law of evidence, quotes with approval the
language of LORD CAMPBELL in the *Tracey Peerage case*, 10
Cl. & Fin. 191, that "skilled witnesses come with such a
bias on their minds to support the cause in which they are
embarked, that hardly any weight should be given to their
evidence." 1 *Taylor on Evidence*, sec. 58. Whilst there is.
undoubtedly much truth in the observations of MR. TAYLOR
just quoted, we must not, however, be understood as inti-
mating that there are not many cases to be found in which
expert testimony has rendered valuable assistance. in the
solution of difficult and important questions arising in the
Courts for determination. MR. WHARTON, commenting upon
the same subject, says, that the true distinction between. the
expert and the non-expert is "that the non-expert testifies
as to conclusions which may be verified by the adjudicating
tribunal ; the expert to conclusions which cannot be so veri-
fied. The non-expert gives the results of a process of rea-
soning familiar to every day life ; the expert gives the results
of a process of reasoning which can be mastered only by
special scientists." 1 *Wharton on Evidence*, sec. 434.

There is no evidence in the record which shows that
Mrs. La Rose ever studied medicine or ever before had been
called upon to investigate or inquire into the subject of the
depth of incisions, judged solely by their surface indications.
The mere fact that she had nursed twenty or thirty cases of
bone-felon, without showing that she was possessed of any
peculiar skill or knowledge in estimating the depth of in-
cisions of like character with the one in question here, did
not qualify her to speak as an expert, and we think there
was manifest error in allowing her to do so. The rule
allowing expert evidence will, in our opinion, be less objec-
tionable and more conducive to justice if it be somewhat
restricted, rather than relaxed. It is largely within the dis-
cretion of the trial Judge, but always subject to the opinion
of the appellate Court. *Baron de Bode's case*, 8 Q. B.
250–267 ; *Di Sora* v. *Phillipps*, 10 H. L. C. 624 ; *Castrique*
v. *Imrie*, L. R. 4 E. & I. App. 434. We have, therefore,

not hesitated to express our views upon the admissibility of such evidence, believing it to be properly reviewable by this Court.

The second exception arises from the refusal of the Court to grant the defendant's first prayer. As already stated, this action is brought in the names of the husband and wife jointly, and if recovery is sought for the commission of an alleged tort against the wife only, the action is proper in form. *Balto. City Pass. R. R. Co.* v. *Kemp*, 61 Md. 74; *Wolf* v. *Bauereis*, 72 Md. 481. If, however, the suit has not been restricted to the recovery of damages growing out of the tort to the wife, but has been permitted to apply to and include damages for a breach of the contract of employment, the rule is different. The prayer refers especially to the pleadings, and we must therefore determine the effect which they have had or should have had upon the trial in the Court below. It is sought by the prayer to instruct the jury, that " if they find from the evidence that the plaintiff, Mrs. Griffith, came to the defendant on February 17th, 1895, to be treated for a bone-felon, and that she returned on the 18th, 19th, 20th and 22d of February, and was treated on all of said days for said disease, and that the said plaintiff did not see the defendant after the 22d until after the amputation of her finger, then the jury are instructed that, in order to find a verdict for the plaintiff for the said amputation, they must find, *under the pleadings,* that the condition of her finger which made such amputation on March 2d necessary resulted from a disease which would have been cured by the exercise of ordinary and reasonable care on the part of the defendant on the aforesaid days, when he so treated the plaintiff, and not from any negligence of the said plaintiff after February 22d directly contributing thereto ; and the jury are further instructed that the burden of proof is on the plaintiff to prove the negligence of the defendant, and it is not permissible for them to infer negligence of the defendant merely from the bad condition of the finger of the plaintiff on or about the time

of the amputation, apart from the other circumstances of
the case." It is contended by the defendant that, *under the
pleadings,* he could be held liable only for improperly treat-
ing the finger of the plaintiff on the days upon which he
had seen her at his office, which were February the 17th,
18th, 19th, 20th and 22d, the plaintiff being an office
patient and seen by the defendant only at his office on the
days named. In consequence of the illness and death of
defendant's father he was continuously absent from his
office, and did not again see plaintiff until after the finger
had on March 2d been amputated. If the defendant had
in his treatment of the finger, prior to the 24th of February,
exercised reasonable care, skill and diligence, and then, be-
cause of the illness of his father, had turned the plaintiff
over to Doctor Cockrell, a competent physician, for the
further treatment of her finger, and the plaintiff refused to
go to Doctor Cockrell for treatment, then the liability of
the defendant ceased, and the plaintiff assumed to herself
the consequence of any injury resulting from the neglect of
her finger, for it cannot be said that the defendant, under
any and all circumstances, was required to continue the
treatment of the plaintiff. If he provides for the further
treatment of the patient in such manner as the defendant did
in the case under consideration here, he has complied with
every reasonable demand upon him. This Court has sel-
dom, be it said to the credit of the profession, been required
to pass upon questions of medical malpractice, but the law
is settled in numerous well-considered cases, that a physi-
cian or surgeon who holds himself out to the world to prac-
tice his profession, by so doing impliedly contracts with
those who employ him that he possesses a reasonable
degree of care, skill and learning, and he is therefore bound
to exercise and is liable for the want of reasonable care,
skill and diligence, and he is responsible in damages arising
as well from want of skill as from neglect in the application
of skill. *Long* v. *Morrison,* 14 Ind. 595. The cases are
generally agreed upon the proposition, that the amount of

care, skill and diligence required is not the highest or greatest, but only such as is ordinarily exercised by others in the profession generally. *Patten* v. *Wiggins*, 51 Me. 594; *Tefft* v. *Wilcox*, 6 Kansas, 46; *Smothers* v. *Hanks*, 34 Iowa, 286; *Ritchey* v. *West*, 23 Ill. 385; *Leighton* v. *Sargent*, 27 N. H. 460; *Almond* v. *Nugent*, 34 Iowa, 300; *Graham* v. *Gautier*, 21 Texas, 111.

We fully agree with the plaintiffs' contention, that when a physician is employed to attend upon a sick person, his employment as well as the relation of physician and patient continues, in the absence of a stipulation to the contrary, as long as attention is required, and the physician or surgeon must exercise reasonable care in determining when the attendance may be properly and safely discontinued. *Ballou* v. *Prescott*, 64 Me. 305; *Lawson* v. *Conaway*, 37 W. Va. 159; *S. C.*, 38 Am. St. Rep. 17. Whilst these cases seem to refer to the attention rendered by a physician or surgeon at the home of the patient, or where the physician or surgeon is compelled to leave his office to bestow such attention, yet, however, the principles of law controlling the right of recovery under such circumstances are practically the same. If an office patient fails to come to the office of the physician or surgeon whom he employs and from whom he has received careful and skillful treatment, and then fails to return to the office for further treatment, and in consequence thereof suffers injury, he is not entitled to maintain an action against the physician, because it is his own default and misfeasance. But we forbear further discussion of this question as the necessities of the case do not require it. Returning then briefly to the question of the pleadings: The declaration is founded upon the single allegation, that the "actual misfeasance, negligence and want of skill" in the treatment of the finger of the plaintiff, which is alleged to have caused the injury complained of; yet the plaintiffs have not restricted their claim for damages within the scope of the pleadings, but seek to include in their recovery damages for the failure of the defendant to be present at his

office on the 24th of February and thereafter, and render
such services as the plaintiff's finger may have required.
No such recovery could be had under the pleadings for the
reasons, first, that if a recovery is sought for, because of the
failure of the defendant to attend at his office to render such
service as he is claimed to have contracted to perform,
such cause of action must be so laid in the declaration.
*Bemus* v. *Howard*, 3 Watts, 255 ; and secondly, the plain-
tiffs cannot sue jointly as husband and wife, when the cause
of action is the mere *non-performance* of a duty imposed
by the contract of employment, which would be *solely* in
right of the husband, and in which the wife could have no
interest as a party to the action.   It would result in an ac-
tion wherein there would be a joinder of two inconsistent
forms of action, the one *ex delicto*, the other *ex contractu*.
The case of *Longmead* v. *Holliday*, 6 Exch. Repts. 761–7,
which was an action by husband and wife against the de-
fendant, who was the maker and seller of certain lamps,
so-called " The Holliday Lamp ;" the husband bought
one of the lamps to be used by his wife and himself in his
shop, the defendant warranted that the lamp was reasonably
fit and proper for that purpose, whereas the lamp was dan-
gerous and unsafe, and when the wife attempted to use it
it exploded and injured her.   PARKE, B., held " that the
action could not be maintained by the wife, there being no
misfeasance towards her, independently of the contract,
which was with the husband alone."   In this view we fully
concur, and think that there was error in the refusal to
grant the defendant's first prayer, notwithstanding the grant-
ing of his second prayer.   For the reasons stated the
judgment must be reversed.

*Judgment reversed with costs, and
new trial granted.*