## SULLIVAN *v.* McGRAW.

SURGEONS—OPERATION ON WRONG LIMB—NEGLIGENCE—QUESTION FOR JURY.

> Plaintiff, who had treated with defendant, a physician and surgeon, for a disease affecting particularly his right leg, upon defendant's advice, went to the hospital for an operation. Under plaintiff's directions, the right leg was prepared by a nurse, and he was placed under the influence of chloroform. Defendant, believing the wrong leg had been prepared by mistake, asked plaintiff's brother which leg plaintiff wished operated on.   The brother, being unable to tell, requested defendant to wait until he could telephone plaintiff's family, which defendant consented to do.   While the brother was at the telephone, plaintiff's father arrived, and said that the left leg was the one, and defendant proceeded to operate on that leg.   There was evidence that the right leg was discolored and inflamed, while the left one was not.   *Held,* that the question of defendant's negligence was for the jury.

Error to Wayne; Carpenter, J.   Submitted June 14, 1898.   Decided July 18, 1898.

Case by James P. Sullivan against Theodore A. McGraw, a surgeon, for malpractice.   From a judgment for defendant on verdict directed by the court, plaintiff brings error.   Reversed.

*Frank C. Cook* and *R. E. Van Syckle* (*M. J. Lehman*, of counsel), for appellant.

*Keena & Lightner*, for appellee.

LONG, J. This action is brought to recover damages for the wrongful operation by defendant upon the plaintiff's left leg,—the claim being that defendant was employed to operate upon the right leg; that, after putting the plaintiff under the influence of chloroform, the defendant wrongfully and carelessly operated upon the left leg, thereby causing plaintiff great pain and suffering. Defendant is a practicing physician and surgeon in the city of Detroit. The case was tried before a jury, and the court directed the verdict in favor of defendant. Plaintiff brings error.

The only question here is whether there was any evidence in the case under which it should have been submitted to the jury for their determination. It appears from plaintiff's testimony that he met the defendant professionally in October, 1896; that his right leg was then very sore. Defendant gave him some medicine from time to time during the following winter, but there seemed to be no improvement. Defendant then advised him to go to the hospital, and he would operate upon it. On Tuesday, May 11, 1897, plaintiff went to the hospital. He was then very lame, using a pair of crutches, and walking with them and using his left leg. The next morning the nurse prepared him for the operation by shaving the right leg from the knee down, as the operation was to be upon the shin bone. After it was shaved, some wash was put on and the leg bandaged. Nothing was done with the left leg. Plaintiff was then taken to the operating room of the hospital by the hospital doctor, and given chloroform. He testifies that he never told the defendant, or any one else, that he wanted his left leg operated upon; that, when he came out of the influence of the chloroform, he found his left leg was paining him, and then for the first time found that the defendant had operated upon that one; that he

was in the hospital five weeks, and suffered great pain from that operation; that the defendant came to see him after the operation, and told him he would operate on the right leg on the following Saturday, which was done; that the right leg did not pain him after the operation on that. On his cross-examination, he testified that both legs had troubled him for several years; that in 1893 sores came out on the shin bone of the left leg; that since 1893 it had not broken out, though it had troubled him, and he took medicine for it; that it was healed, and was not bothering him, at the time of the operation, but that the right leg had continued to be sore. He was asked if the defendant had not advised his going to the hospital and having both legs operated upon, and denied that he was so advised. He further testified that a week before the operation, when the defendant advised him to go to the hospital for the operation, he showed him both legs, so that he could compare them; that there had always been an enlargement of the shin of the left leg.

The nurse testified that he prepared plaintiff for the operation; that he had a swelling on both legs, and witness asked him which leg was to be operated upon, and he said the right leg, so he prepared that; that the flesh on the right leg was a little discolored. Dr. Hackett was sworn for plaintiff, and testified that he examined his legs in February, 1897, and prescribed for the right one; that it was swollen and discolored; that it showed symptoms of inflammation, heat, redness, pain, and swelling; that there was no evidence of inflammation in the left leg, but that it appeared to be in a healthy condition. William Sullivan, a brother of plaintiff, was called, and testified that he was present at the operation; that he held plaintiff's pulse while the chloroform was being administered by Dr. Atridge; that, when plaintiff was put on the operating table, both legs were exposed to the defendant; that the defendant then said: "See here! you fellows have made a mistake; you have prepared the wrong leg for the operation;" that Dr. Van Slyke, who was present, said

he did not think it possible, and defendant repeated, "You have prepared the wrong leg." Witness then testified:

"He asked me which he wanted operated upon. I told him I was confused, and I did not know. * * * He said he was sure it was the left one, and that they had prepared the wrong leg. He then asked Dr. Steinbrecher, who was standing there, to prepare the left leg. * * * While they were preparing it, I said, 'You better wait a minute, until I go and telephone my folks, so we will be sure.' And he asked me how long it would take. · I said, 'A couple of minutes.' He said, 'All right.' So I said, 'Will you wait?' and he nodded his head yes. I called up the 'phone, and had to wait, and Dr. Troy came * * * and said, 'They are operating on his left leg.'"

The witness further testified that, a short time after the operation, the defendant went into the plaintiff's room, and asked him which leg he wanted operated upon, and plaintiff told him his right leg, and defendant then said: "Why, I thought it was the left leg. * * * You told me down stairs that it was the left leg." And plaintiff then said, "I must have been asleep." Witness further testified that the defendant spoke to the plaintiff when he was on the operating table. He told Dr. Atridge to stop giving him chloroform, and then asked plaintiff which leg he wanted operated upon, but plaintiff made no answer. He asked again, "Is it the left leg?" and plaintiff groaned a little, as though he said "Yes," but that he was entirely unconscious at the time. This was just before the witness went to the telephone.

The father of plaintiff was called as a witness, and testified that he arrived at the hospital after plaintiff had been put on the operating table; that they showed him both legs, and the defendant said, pointing to the right leg, "Is that the right leg?" "'No,' I said, 'the other leg.' I had my mind on that leg all the time. I thought Dr. McGraw could not make a mistake." Witness further testified that he did not go to the hospital at plaintiff's request; that he told him not to come.

At the conclusion of the plaintiff's proofs, the court, at the request of counsel for defendant, directed the verdict in favor of defendant. The court stated to the jury, among other things:

" It seems to me that this case turns upon the question of whether or not the doctor was negligent in operating upon the left leg, instead of upon the right leg. ' If I should leave this to you, I would have to say to you, if the doctor made these inquiries, and was told by the father that that was the leg to operate upon, that would justify him. Now, there is no doubt that he did; there is nothing to leave to you on the question of negligence, it seems to me. It is earnestly insisted upon the part of plaintiff that this case does not depend upon the doctor's negligence, but does depend upon the want of consent or absence of consent upon the part of the plaintiff. I do not so understand the law. Of course, if there had been no consent at all to any operation, it would have been clearly trespass to have touched the plaintiff's person. But plaintiff had gone there for the purpose of having an operation performed upon him. To touch his person was not technically a trespass; but in this case a mistake was made in the choice of legs to be operated upon. The liability, in making that mistake, must depend upon whether or not the doctor was negligent; and, as I say, there was nothing in the case which would warrant you in finding a verdict on that theory."

There is no claim in the present case that the doctor did not have the skill and knowledge necessary for the operation. The declaration avers negligence on the part of defendant in operating upon the left, instead of the right, leg. We think the court below was not in error in saying that the only question in the case for determination was whether or not the defendant was negligent in operating upon the wrong leg. That is the averment in the declaration, and the only case which the plaintiff's proofs tended to establish. We cannot, however, agree with the court below that there was no evidence tending to establish that fact. Plaintiff had put himself under the care of the defendant, and, as he says, for the purpose of an operation upon his right leg. According to plain-

tiff's statement, the doctor knew which leg was to be operated upon. The right leg was prepared by the nurse, under the plaintiff's direction. When in the operating room, the defendant himself disputed the fact that the leg so prepared was the one to be operated upon. He asked the brother, who says he got confused, and was unable to state, but asked time to make the inquiry by telephone, and started to do so; but the defendant, instead of waiting, operated before the brother returned. The only excuse given, so far as this record shows, is that the father came in at that moment, and directed the left leg to be operated upon. The father was not there at the plaintiff's request; on the contrary, he was told to remain at home. It may be true that the doctor might be excused for the operation upon the wrong leg if he had waited until the brother returned, and had been advised that the family said that it was the left leg to be operated upon. Perhaps that, in connection with what the father said, might show that he was in the exercise of due care, if there were no other testimony which had a tendency to show the want of such care as he should have exercised. But there is some testimony tending to show that the left leg was not discolored or inflamed, while the right leg was. In addition to this, the plaintiff testifies that, at the time the doctor advised him to go to the hospital, it was for the purpose of an operation upon the right leg, and not upon the left. The case should have been submitted to the jury for their determination whether the defendant exercised that degree of care which, under the circumstances, he was bound to exercise.

The judgment must be reversed, and a new trial granted.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. GRANT, C. J., took no part in the decision.