## J. SHERIDAN McCLEES ET AL. *v.* MARY COHEN.
[No. 26, October Term, 1929.]

*Decided January 7th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Frank Driscoll* and *William H. Marshall,* for the appellants.

*Julius P. Robinson,* with whom was *Jacob L. Cardin* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This is an appeal from a judgment in favor of the plaintiff (appellee) against the defendants (appellants), in a suit brought by the appellee for the recovery of damages for the wrongful extraction of two teeth by Dr. John C. Sutherland, a dentist in the employ of Dr. J. Sheridan McClees, who traded under the name of the Broadway Dental Parlors.

There are six exceptions in the record, the first to the sustaining of the demurrer to the plea of limitations, the second to fifth inclusive to rulings on the evidence, and the sixth to the granting of the plaintiff's prayers and the refusal of the defendants' first, second, third, fifth, sixth, eighth and tenth prayers, and the overruling of the defendants' special exception to the plaintiff's prayer.

The plaintiff's demurrer, which was sustained, was to a plea that the alleged cause of action did not occur within one year of the filing of the amended declaration as to John C. Sutherland. The appellants make no mention of the plea or demurrer in their brief, yet they do not abandon the exception. The plea could only have been entered on the theory that the averment of the declaration that the appellee had requested Dr. Sutherland to extract "two small roots, commonly called baby roots," and he had "negligently extracted two good teeth instead," amounted to an assault, for which the period of limitations is one year. Code, art. 57, sec. 1. This opens the question as to what kind of action this is, and the authorities are not in accord. In *Throne v. Wandell,* 176 Wis. 97, it was held to be technical assault where a dentist extracted six teeth without the plaintiff's consent. Also in *Mohr v. Williams,* 95 Minn. 261, 5 Ann. Cas. 303, where, after the patient had been anesthetized preparatory to an operation on the left ear, the surgeon thought the right ear was more in need of an operation and he operated on it and not on the left. In *Sullivan v. McGraw,* 118 Mich. 39, a surgeon was sued for amputating the wrong leg. The court there said: "If there had been no consent * * * it would have been trespass to have touched the plaintiff's person." In

*Griffin v. Norman,* 192 N. Y. Supp. 322, in which the defendant was instructed to extract a certain tooth, he administered gas, took out a sound tooth, then discovered his mistake and removed the one indicated by the plaintiff, the court there saying it was "quite clear that plaintiff made out a *prima facie* case of negligence." In *Pratt v. Davis,* 118 Ill. App. 161, affirmed 224 Ill. 300, 7 L. R. A. (N. S.) 609, 8 Ann. Cas. 197, an operation without consent was held to be trespass on the case. In *Wood v. Wyeth,* 106 N. Y. App. Div. 21, 94 N. Y. Supp. 360, the plaintiff was required to elect whether he would try the case as an action for performing an operation without consent, or as a suit for negligence. The confusion as to the form of the action in such cases is shown by the following quotation from 21 *R. C. L.* 380: "Some of the cases seem to proceed on the theory that the liability is the result of a contract implied by law in which the physician warrants that he possesses the requisite skill and will exercise the requisite care. It is also said that an action for malpractice is a tort action, but one which grows out of a contract made by the physician with the patient. Such language has always led to a correct result, and no case has been found refusing to allow a person who was a patient in fact to recover against his physician because of the absence of a contract with the physician. * * * It seems to be good law and logic to argue that the liability of a physician for failure to exercise requisite skill and care grows out of the relation which he has entered into with his patient, and that the relation is the result of a consensual transaction which most frequently is a contract, but is not necessarily such."

In *City Passenger Railway Co. v. Tanner,* 90 Md. 315, which was a suit brought by the plaintiff for injuries sustained on account of his being hit by a street car, a plea of limitations of one year was filed on the theory that the declaration, though for personal injuries as a result of negligence, was in effect an assault. A demurrer to the plea was sustained, and the opinion, quoting from Baron Parke, in *Shar-*

*rod v. London and Northwestern Rwy. Co.,* 4 Exch. 584, said: "Whenever the injury done to the plaintiff results from the immediate force of the defendant himself, whether intentional or not, the plaintiff may bring an action of trespass. On the other hand, if the act be that of the servant and be negligent, not wilful, case is the only remedy against the master, unless the act was done by his command." See note 12 *A. L. R.* 1417.

In *Angulo v. Hallar,* 137 Md. 227, 232, which was a suit against a dentist, this court, in applying the same rule to dentists as to physicians and suregons, quoting from *Dashiell v. Griffith,* 84 Md. 363, 380, said "that a physician or surgeon who holds himself out to the world to practice his profession, by so doing impliedly contracts with those who employ him that he possesses a reasonable degree of care, skill, and learning, and he is, therefore, bound to exercise, and is liable for the want of, reasonable care, skill and diligence, and he is responsible in damages arising, as well from want of skill, as from neglect in the application of skill."

The plaintiff in the declaration says that "the said dentist (Sutherland), while acting in the scope of his employment did not treat her with due care, or reasonable diligence and skill; but treated and operated on her carelessly and unskilfully, and negligently extracted two good teeth instead of the said baby roots, as instructed by the plaintiff." There is no charge here of wilfullness; only one of carelessness, unskilfullness, and negligence. The declaration says that the plaintiff went to the Broadway Dental Parlors and requested the removal of two baby roots, and when the dentist got through with her she still had the baby roots and was minus what she regarded as two good teeth. Whether the action be regarded as trespass, case, or contract (and it must be one of them), the period of limitations is three years and the demurrer was properly sustained. Code, art. 57, sec. 1; *Hahn v. Claybrook,* 130 Md. 182.

At the conclusion of the case the plaintiff offered one, a damage, prayer, and the defendant eleven prayers. The

defendants' seventh prayer does not appear from the record to have been passed upon, likely due to its being a repetition of the fourth, which was granted. The defendants specially excepted to the plaintiff's prayer on the ground that there was no evidence as to the difference in her condition before the injury and at the trial, nor as to the permanency of the injuries. The plaintiff testified that the defendant Sutherland had extracted two good teeth and that, as a result, she had not been able to masticate food as she did before her visit to the defendant. The difference in condition and permanency of injury are both to be reckoned in the loss of two teeth. This is a fact which speaks for itself, and the special exception was properly overruled. The defendants' first, second, third, sixth, and tenth prayers all asked for instructed verdicts for lack of evidence of negligence or want of care or skill of Dr. McClees or his employee, Dr. Sutherland.

The plaintiff's testimony is that she went to the Broadway Dental Parlors to have two baby roots, one on each side of her upper jaw, removed, and that she so instructed Dr. Sutherland, who operated on her; that he examined her mouth and gave her a local anaesthetic, which was so effective that the result was the painless extraction of two teeth. According to the plaintiff, she paid the dentist his charge, thinking the roots she indicated had been removed, and did not know otherwise until after she left the dental office. She then went to the home of her sister, who took her to another dentist, who extracted the roots. There is no evidence of lack of care or skill in the removal of the teeth sued for, and if the defendant had been instructed to pull them, or the matter of their removal had been submitted to the exercise of his judgment, there could have been no recovery in this case. *Angulo v. Hallar,* 137 Md. 227.

The testimony of Dr. Sutherland was "that he made the usual examination he makes in all cases; she was suffering from pain caused by toothache; he made an examination, located the trouble, he found in the two lower molar teeth there was inflammation, * * * that they were giving her

trouble. He examined the two baby roots, but that the trouble had centered in the lower jaw; * * * that he extracted the two lower molar teeth; then gave her the usual treatment; that she did not complain of pain." To the question, "Did Mrs. Cohen point out to you any particular teeth she thought were affecting her?", answered, "No, she came in suffering pain, and she did not designate any particular tooth." If the patient goes to the dentist or physician and submits herself for a diagnosis, with the request, express or implied, that he do what is necessary to give her relief, then he is only answerable for the lack of proper knowledge, skill and care in the treatment or operation. *State, use of Janney v. Housekeeper,* 70 Md. 162; *Dashiell v. Griffith,* 84 Md. 363; *Miller v. Leib,* 109 Md. 414. And, in the absence of evidence to the contrary, it will be presumed that the operation or work performed was carefully and skilfully done. *Angulo v. Hallar,* 137 Md. 227.

The appellee testified that she pointed out the two baby roots on opposite sides of the upper jaw, and that Dr. Sutherland, after examining her mouth, said, "These two have got to come out," and then, in reply to a question asked by the court, the witness said, "They must come out immediately," and the dentist then gave her "cocaine with a needle and he shoved the needle in her gums but she felt no pain; she did not feel him working on her teeth." Recalled and examined by the court, she said that she stated she wanted to have two roots pulled out, showed him (dentist and court) where they were; the dentist put his finger in there and said "They will have to come out"; said she had pain in her upper jaw and nowhere else. On cross-examination, said she did not know the dentist was working on her lower jaw. "I felt that he was working, but I could not tell where."

It would be consistent with the dentist's testimony that he meant or indicated the two lower molars when he said, "These two have got to come out," but it is a question of fact for the jury whether the plaintiff went to the dentist because she was suffering pain from her teeth generally and submitted to his

judgment, or went there to have two roots extracted, and, in violation of her instructions and without her consent, he pulled two lower teeth instead. If the former, he was entitled to a verdict; if the latter, she was. *Throne v. Wandell,* 176 Wis. 97; *Mohr v. Williams,* 95 Minn. 261; *Griffin v. Norman,* 192 N. Y. Supp. 322; *Pratt v. Davis,* 118 Ill. App. 161, 224 Ill. 300, 7 L. R. A. (N. S.) 609; *State, use of Janney, v. Housekeeper, supra; Dashiell v. Griffith, supra.* This is not a case wherein an emergency arose calling for immediate action in order to preserve the life or health of the patient and it was impracticable to obtain her consent, or one wherein, in the course of an operation, conditions not anticipated were discovered which, if not removed, would endanger the life or health of the patient. 48 *C. J.* 1131. There was no such emergency here, and if the plaintiff, as she contends, engaged the defendants to extract the teeth indicated by her, her consent before extracting any others was necessary, and the contradictory statements of dentist and patient as to what was said and done made it proper for the trial court to submit the case to the jury and to reject the defendants' first, second, third, sixth and tenth prayers.

The eighth prayer was for an instruction that, if the jury found the injury of the plaintiff resulted from her own act or from something for which the defendants were not responsible, the verdict should be for the defendants. We fail to find any evidence in the record to support the theory of the prayer, and it was properly refused. The defendants complained that the plaintiff did not come back to see them. Dr. Sutherland made no such suggestion. He thought he had done a good job and there was, therefore, no necessity for any further treatment of the plaintiff by him. In the absence of any instructions from the dentist to return for treatment, the plaintiff would not be chargeable with his omission. *Dashiell v. Griffith,* 84 Md. 363, 381; 48 *C. J.* 1134. The plaintiff, after having left the defendants' office, did go to another dentist, have the roots extracted, and was treated by him for several weeks. There is no evidence that the second dentist did not properly treat the plaintiff or that the defendants' rights

were prejudiced by his treatment. "A patient's failure to return for further treatment, after discovering that he is not improving because of the physician's negligent treatment, does not bar recovery for injuries from such improper treatment; and the mere fact that a patient, who believes he has been injured by the negligence of his physician, discharges him or quits his care and employs another, is not in itself evidence of contributory negligence." 48 *C. J.* 1135.

The second exception was to allowing the plaintiff to say what effect the extraction of the teeth had on her. It might have been objectionable as leading, because it assumed that it had some unusual or unlooked for effect. The objection was not made on the ground that it was leading, and the objection will not be sustained. The third exception was to the refusal of the court to allow the defendants' counsel to ask of his expert witness, "From what you heard him testify, would you say he, Dr. Sutherland, exercised the ordinary skill that an ordinary and skilled dentist would exercise?" This was an issue involved in the case, and, according to the defendants, the chief issue, and to permit it to be answered would be to allow the witness to usurp the functions of the jury. *Jones on Evidence* (Civil Cases), sec. 372; *Iron Clad Mfg. Co. v. Stanfield,* 112 Md. 360, 386.

The fourth exception was to the overruling of an objection to a question which was not answered, and therefore harmless, even if irrelevant. The fifth exception seems to cover several questions asked the defendants' expert on cross-examination as to whether, under the facts attempted to be covered, an ordinarily prudent dentist would have had an X-ray picture taken. The purpose of the question was proper, but the witness thought the facts shown in this case would not justify the expense of an X-ray, so that, even from the defendants' standpoint, neither question nor answer did them any damage.

Finding no error, the judgment will be affirmed.

*Judgment affirmed, with costs.*