## WILLIAM J. GRAHAM v. WILLIAM J. GAUTIER.

The practice of blending the various branches of the profession, but also the fact that they are not legally created, as a class, make it consistent with principle, to place physicians on the same footing with attorneys, factors, pilots, and other persons, undertaking to perform services which require skill, for reward.

The care, diligence and skill required, relate to the professional duties, and not to nursing and providing necessaries and comforts.

A physician is not only required to be skillful, or, even, to prescribe with skill, when he comes to see his patient; but his duty demands that he shall attend his patient with care and diligence, as well as skill.

The fact that a man is a physician of ordinary skill being proved, does not raise a legal presumption that the particular services in any one case were skillfully rendered by him. It is evidence of that fact; and, practically, it may often be the only attainable evidence of it. But there is no rule of law, giving it artifical weight, as a legal presumption, or making it *prima facie* evidence.

A medical practitioner never insures the result, but simply engages that he possesses a reasonable degree of skill, such as is ordinarily possessed by a profession generally, and to exercise that skill with reasonable care and diligence; and again, to exercise his best judgment, but is not responsible for a mistake of judgment. That is, after he has, with reasonable care and diligence, exercised ordinary skill, he is not responsible for a mistake of judgment, or for the result if he should happen to be mistaken.

Such are the rules applicable to the ordinary, implied undertaking of a physi-
cian.  They may be varied by special circumstances or agreements.

Where a plea in reconvention, in its very nature, negatives the plaintiff's cause
of action ; as if a physician sues for the value of his services, and the defen-
dant pleads in reconvention, admitting the services as alleged, but alleging
negligence and want of skill, from which defendant suffered damages, for
which he prays judgment; the plaintiff has the right to open and conclude
the case.

Appeal from Brazoria.    Tried below before the Hon. James
H. Bell.

Suit by appellee against appellant for $187 57, for medical
attendance to the slaves of the appellant.    Answer admitting
that the services were rendered as stated in the petition ; and
that the charges were the usual charges for such services ; but
alleging that by reason of the unskillful and negligent treat-
ment of the plaintiff, said slaves, ten in number, of the value
of $10,700, had died, wherefore defendant prayed judgment
for said sum against said plaintiff.

The testimony was very voluminous, and tended to different
conclusions.

The Court instructed the jury as follows : That if they be-
lieve from the evidence that the plaintiff rendered the services
alleged in his petition, and that the plaintiff is a physician of
ordinary skill in his profession, and that the service rendered
to the slaves of the defendant by the plaintiff was reasonably
worth the sums charged in his petition, the plaintiff is entitled
to a verdict for the amount claimed in his petition.

A physician who undertakes to treat patients for a remune-
ration, must be a man of ordinary skill in his profession, and
is responsible for a lack of ordinary skill in his treatment ;
but extraordinary skill is not required in a physician, nor can
he be made resbonsible in damages for the loss of patients
who might have been saved by extraordinary skill.

When a physician seeks to recover compensation for his ser-
vices, in a suit at law, and makes proof, in general terms, of

his skill in his profession, he is not required to make any further proof of the skill of his treatment in the particular case; but if the defendant seeks to defeat a recovery, or to recover damages in reconvention, upon the grounds of unskillful treatment or malpractice, it devolves on him to make the proof of malpractise and of want of skill on the part of the physician.

It is no defence to an action by a physician, for his reasonable fees for professional services, that very great loss ensued to the defendant in consequence of the disease which the physician was called to treat. No matter how great may be the loss of property to a party who employs a physician, the physician is entitled to recover his reasonable fees, if he has performed professional services with ordinary skill.

On the other hand, although a physician may be proved to be of ordinary skill in his profession, he is not entitled to recover for professional services, unless he has employed ordinary skill in rendering the services which are the subjects matter of enquiry ; but, as was before said, after proof in general terms of the physician's skill in his profession, it devolves upon the defendant in any particular case, to make proof of unskillfulness or malpractice on the part of the physician, in order to defeat a recovery of reasonable fees for his services.

If a physician undertakes to treat patients for compensation, and treats them with less than ordinary skill, he is liable in damages for such loss as may be occasioned by his unskillful treatment.

In the case of the treatment of slaves by a physician, under an employment by the master, if the physician treats the slaves with less than ordinary skill, he is liable in damages to the master for such loss of property as is caused by such unskillful treatment of his slaves.

In making up a verdict for damages in a case of loss to a party by the unskillful treatment and malpractice of a physician, the jury should render their verdict for the amount of

the actual loss which they believe, from the evidence, the party has sustained by such unskillful treatment and malpractice.

In a case like the present, it is the duty of the jury to divest their minds of all outside influences and impressions, and to look only to the facts as given in evidence, and to the law as laid down by the Court, for their government. The effect of your verdict upon the standing of a professional man is not at all to be considered by you ; nor ought your sympathy for a defendant, who has already sustained a heavy loss, to have one particle of influence upon your action as jurors.

The following instructions were asked by defendant, and refused by the Court :

1st. If the jury believe from the evidence, that the plaintiff, as a practicing physician, undertook to perform the services mentioned in the petition, and if they also believe from the evidence, that he did not perform said services with proper skill and knowledge, so that the defendant derived some benefit from said services, the defendant is not liable.

2d. If they believe from the evidence, that the plaintiff was employed as a practicing physician, to attend upon the slaves of defendant during their illness, and that he undertook to attend them as such, and that the plaintiff during his attendance upon said slaves, did not perform his duty with diligence and skill, then the plaintiff is liable to the defendant for every injury that occurred to him, defendant, for the want of diligence and skill in the plaintiff.

3d. A physician is liable for the want of ordinary diligence, care and skill to the injured party ; and he will be liable also for gross carelessness or unskillfulness, or for the want of ordinary judgment.

4th. If the jury believe from the evidence, that the plaintiff treated the slaves of defendant for a disease or diseases with which they were not affected, and did not treat them for the disease under which the said slaves were laboring, and if they also believe from the evidence, that a physician of ordinary

Graham v. Gautier.

care, skill and judgment would have distinguished the disease under which they were laboring, and treated them in a different manner, then the plaintiff would be liable in this action.

5th. If the jury believe from the evidence, that the said slaves were laboring under an attack of measles when the plaintiff was attending them, and he treated said slaves for an attack of cholera, or pneumonia, or typhoid pneumonia, and if they also believe that his said treatment was occasioned by the want of skill in the plaintiff, and that thereby the said slaves were lost to the defendant, then the plaintiff is liable in this action for the value of said slaves.

Verdict for plaintiff for $166 57 ; remittitur of $24 57, and judgment for the balance. Motion for new trial overruled, &c.

It appeared by bill of exceptions, that the defendant claimed the right to open and conclude the case, but that his claim was overruled by the Court.

*P. MacGreal*, for appellant. I. The plaintiff's cause of action being admitted, the defendant was entitled to open and close the case in support of his claim in reconvention : this was the only issue before the Court.

II. The Court erred in giving the 1st, 2d, 3d, 4th, 5th, 6th and 7th instructions to the jury, by which they were restricted alone to the enquiry, as to the " ordinary skill " of the plaintiff, or his want of " ordinary skill."

III. The Court erred in refusing to give the charges asked by the defendant.

The law implies an undertaking on the part of physicians, that they will use a reasonable degree of care and skill in the treatment of their patients. And for gross carelessness or unskillfulness, an action lies. (Slate v. Baker, 2 Wills. 359 ; Camden v. Humphrey, 9 Conn. 209 ; Howard v. Grover, 28 Maine, 97.)

The testimony throughout shows :

1st. That the plaintiff, Gautier, was either too ignorant, or

unattentive, to know of what complaint the slaves were sick ; and,

2d. That without sufficient skill, investigation or judgment, he treated them for a different disease from the one of which they were ill, or for different diseases, and thereby caused their death.

*Wharton & Terry*, for appellee.    I.    Appellee avers in his petition, that he was a practicing physician ; that he had performed certain medical services for the appellant, at his special instance and request, and that his services were reasonably worth the amount claimed.    The gist of appellee's action was that his charges were reasonable, because his services were performed with reasonable skill.    The appellant should have admitted to have entitled him to open and conclude, that the services of appellee were reasonably worth the amount claimed; but he seeks to avoid the direct admission of this material allegation, which, it is contended, would have entirely admitted away his case ; and to admit only so many of appellee's allegations as would not estop him, yet entitle him to open and conclude.    (Mims v. Mitchell, 1 Tex. R. 443.)

II.    It will not be necessary to take up the charges of the Court *seriatim*, but it is sufficient for the purposes of this case to examine the legal principle that pervades all the charges given, viz : that a physician undertakes to treat cases with reasonable skill, and that he is liable in damages if he treats them with less than reasonable skill.    (1 Parsons on Con. 539, note b ; Gallaher v. Thompson, Wright, 466 ; Chitty on Con. 553, note f. 554.)

III.    There was no error in refusing the charges asked by the appellant.    As to the first charge requested by him, there is no principle of law more clearly settled, than that the claim to remuneration for medical services does not depend upon the question whether a cure has been effected.    (Chitty on Con. 564.)

The other charges asked by the appellant, so far as they were proper and legal, were substantially given by the Court; and they are not deemed of sufficient importance to argue.

*W. P. Ballinger*, also, for appellee.

ROBERTS, J. This case involves the rights and liabilities of medical practitioners, called in this country by the appellation of physicians.   In England, physicians are a class of persons who have a diploma from a College of Physicians, and are entitled to the honorary distinction of Doctor of Medicine.   They could not maintain suits for their fees by the Common Law any more than could Barristers at law.   (Lipscomb v. Holmes, 2 Campb. R. 441 ; Chorley v. Balcot, 4 Tenn. R. 317.)  Apothecaries and surgeons could maintain actions for their medicines and services, and were liable to be sued for any damage resulting from a want of ordinary care, diligence and skill in their professional employment.   (Slater v. Baker, 2 Wilson, 359 ; Seare v. Prentice, 8 East. 347 ; 4 Id. 448.)

In the American States these professions have been generally blended, particularly in their early settlement ; and medical bills are allowed to be sued for and recovered in our Courts. (Hewit v. Charier. 16 Pick. R. 353 ; Mays v. Hogan, 4 Tex. R. 26 ; Parsons on Con. 539.)   Being thus entitled to a compensation, they are bound to the exercise of ordinary care, diligence and skill in what they professionally undertake to perform ; and if damage ensue from a want of this, they are liable to the party injured.   (3 Black. Com., marg. page 122; Hewit v. Charier, 16 Pick. R. 354 ; Landon v. Humphrey, 9 Conn. R. 209 ; Howard v. Grover, 28 Maine R. 97.)

In 1837, the Congress of the Republic passed a law establishing a Board of Medical Censors, for the purpose of granting licenses to practicing physicians ; which act provided that only such licensed persons should be capable of collecting their medical bills.  This Medical Board was not kept up, and the act

thereby became inoperative and was formally repealed in 1848.

This leaves physicians without any legal establishment as a class, as they existed in England and in many of the American States ; nor are they recognized as a class otherwise than indirectly ; as by being exempt from serving on juries, &c. (Hart. Dig., Art. 1641.)

Then not only the practice of blending the various branches of the profession, but also the fact that they are not legally created as a class, make it consistent with principle to place physicians on the same footing with attorneys, factors, pilots, and other persons undertaking to perform services which require skill, for reward.   Their employment, and their duty under it, are liable to be varied by innumerable circumstances of time, place, emergency and the like ; but ordinarily the rule, laid down above, would determine the limits of their responsibility.   The care, diligence and skill required, relate to the professional duties, and not to nursing and providing necessaries and comforts.

The testimony shows that these negroes were taken sick in Matagorda county, with typhoid fever, and then measles upon that, and were first attended to by Dr. Fisher, who is said to have pronounced it cholera.   They were moved while sick to the McNeal place, when Dr. Gautier was called to see them ; and while he was attending on them they were moved to Hinckle's place.   The idea of their having some contagious disease caused them thus to be moved from place to place. The houses in which they were lodged were open, the weather was not good, they were not well provided with bedding and clothing, and were left in these outhouses mainly to themselves, apart from any white family to see that they were properly nursed and provided for ; (the white family being sick at another place at the same time.)   It would have been rather a matter of astonishment if all these negroes had survived under such circumstances, with the best medical skill and pro-

fessional attention.  The physician was not bound to nurse them and provide for them.  It was his business to instruct others how to do it.

The Court below charged the jury fully as to the degree of skill necessary to be exercised by a physician, but refused to charge any thing in reference to the degree of care and diligence which the law imposes on him.  Skill, in its broadest sense, might be understood to include the others ; but not necessarily, or even usually so.  A man may be very skillful without being very diligent or careful.  Yet skillful treatment as a physician would usually be understood to include all these qualities.  A physician might prescribe with great skill, when he came to see his patient, but be negligent and irregular in coming, and might not be careful enough in giving directions as to the management of the case in his absence.

The evidence upon the subject of Dr. Gautier's care and diligence was somewhat conflicting.  It was stated by N. B. Gorsuch, that he came frequently and gave about the same attention ordinarily given by physicians.  On the other hand, it was shewn that he only staid two hours at a time, and was not in the house much with the negroes when he came ; and Dr. Chinn's testimony shows that very great diligence and care were required of any one who would undertake to attend to them as a physician.  However improbable it might appear to the Judge, that an impartial jury would, under all the circumstances, make the physician pay for the loss of these exposed and neglected negroes—neglected and exposed by the misfortune rather than the fault of the owner—it was the right of the party to have the law charged, in its full extent, so as to submit to the jury whether or not Dr. Gautier had used ordinary care and diligence, as well as skill in his treatment. This was a question which arose upon his petition for his medical bill, as well as upon Graham's plea of reconvention for damages.  We think the Court erred in not giving such charge when requested so to do by appellant.

It may be well to remark in reference to another part of the charge of the Court, that the fact that a man is a physician of ordinary skill being proved, does not raise a *legal* inference, as is supposed by the charge, that the particular services in any one case were skillfully rendered by him. It is a *natural* presumption not *legal*. It is evidence of that fact, and practically it may often be the only attainable evidence of it. But there is no *rule of law*, giving it artificial weight as a legal presumption, or making it *prima facie* evidence. The question at issue was, the value of the services charged in the bill. Proof of his being a physician of ordinary skill will be an element in the evidence to establish the value charged, and it will ordinarily satisfy the mind of the value as alleged, if shewn to be the usual charges, unless there be something proved rebutting such presumption.

The duty and responsibility of a physician is well stated by a Judge in Pennsylvania : "It is a rule of law, that a medical practitioner never insures the result, but simply engages that he possesses a reasonable degree of skill, such as is ordinarily possessed by a profession generally, and to exercise that skill with reasonable care and diligence ; and, again, to exercise his best judgment, but is not responsible for a mistake of judgment." That is, after he has, with reasonable care and diligence, exercised ordinary skill, he is not responsible for a mistake of judgment, or for the result if he should happen to be mistaken. Such are the rules applicable to the ordinary, implied undertaking of a physician. They may be varied by special circumstances or agreements.

The Court did not err in holding that the plaintiff was entitled to open and conclude the argument of the case. The admission of defendant was so qualified as to avoid admitting the plaintiff's cause of action as set out in the petition, and without that he could not rightfully claim the opening and conclusion. Judgment is reversed and cause remanded.

Reversed and remanded.