## GIFFORD v. HOWELL.
### No. 4913.

Court of Civil Appeals of Texas. Amarillo.
June 6, 1938.

Rehearing Denied Sept. 12, 1938.

Charles Clements, of Plainview, and Vickers & Campbell, of Lubbock, for appellant.

Lockhart & Brown, of Lubbock, and Griffin & Morehead, of Plainview, for appellee.

JACKSON, Chief Justice.

The appellant, Mittie Gifford, instituted this suit in the District Court of Hale County against the appellee, Dr. McKinley Howell, to recover damages in the sum of $30,000 for personal injuries she claims to have suffered on account of the negligence of appellee, and $1,217.50 special damages paid for medical care, hospitalization, drugs and doctors' fees.

She alleges that on or about July 28, 1936 she had a sore mouth, throat and gums and consulted and engaged appellee to diagnose and treat her for such ailment; that he examined her mouth and throat, swabbed them out on two occasions, and advised her that she was afflicted with syphilis and it was necessary that she at once start treatment for such disease, which would consist of shots of arsenic and bismuth in the veins of her arms and the muscles of her hips. She told him that she had never been so afflicted and could not understand how she could have contracted such a loathsome disease and he informed her it might be contracted by drinking or eating with associates who had it, and in other ways. She told him she had suffered with and had been treated for trench mouth, but he advised he was certain that her ailment was not trench mouth. He informed her that there was no use to make a blood test or laboratory test; that he had treated many cases and was not mistaken in his diagnosis, and the disease was in a very advanced stage. She alleges she was not afflicted with syphilis and by the exercise of ordinary care, prudence and diligence, the appellee would have discovered and known that she was not so afflicted and would have administered the proper treatment for trench mouth, which was the ailment from which she was suffering; that on account of the mistreatment of appellant,—the administration of arsenic and bismuth and other poisonous drugs, she was seriously and permanently injured; that the appellant failed and neglected to make a Wassermann test or a microscopic examination of the infected parts of her mouth, throat and gums, or to make any of the scientific tests relied on by physicians to enable them to determine with the greatest degree of certainty possible whether or not a person is syphilitic and that his omission and failure to make such tests or any of them, his diagnosis that her affliction was syphilis, and his treatment therefor on the superficial examination made, was negligence and the direct and proximate cause of the injuries suffered and sustained by her.

The appellee answered by general demurrer, special exceptions, general denial, and alleges that the appellant voluntarily submitted herself to the treatment administered with full knowledge of the nature thereof, and that the treatment was the ordinary and usual course of treatment prescribed by physicians practicing in Plainview and in similar communities and was not dangerous in itself; that the injuries, if any, sustained were due to idiosyncrasy which could not be detected by any means known to the medical profession and could not have been detected by ordinary care and diligence.

At the close of the testimony the court peremptorily directed a verdict in behalf of the appellee and judgment was rendered that appellant take nothing by her suit, from which action this appeal is prosecuted.

The testimony discloses without dispute that Mittie Gifford, about forty-two years of age, in good health, except what she thought was sore gums, sore mouth and sore throat, on July 28, 1936 engaged the professional services of Dr. Howell of Plainview, Texas, to diagnose her ailment and treat her therefor. She told him that she had previously had trench mouth, but apparently had been cured. He swabbed her mouth and throat, gave her some prescriptions for medicine, and instructed her to return the following day. The next day, while at his office, he again examined and swabbed her throat and mouth and diagnosed her affliction as a case of syphilis in the last stages and informed her that it was necessary to give her arsenic and bismuth treatments by injection into her arms and into her hips; that he could make a Wassermann test but it would require three or four days and he knew that she was affected with syphilis and the disease had reached a very bad stage and needed prompt treatment. She was given no treatment that day, the 29th, but, in company with her sister, returned to Dr. Howell's office the next day and he informed her again, this time in the presence of her sister, that he could make a Wassermann test but it was not necessary as he knew that she was affected with syphilis and it would only delay the beginning of the treatment and that the disease was greatly advanced and in its last stages. Under this advice she consented and he began the

treatments that day by an injection of medicine into her hip. He continued the treatments every other day, alternating the medicines, and in about two weeks her eyes became inflamed and watery and in about three weeks her feet, ankles, arms and legs began to swell, all of which Dr. Howell knew, but the treatments were continued until September 13th, on which date, on account of the condition of her eyes and the swelling of her feet, legs, hands and body, she returned home and went to bed where she stayed until the 17th when she was removed to the Plainview Hospital because growing progressively worse. At that time she had reached a semi-conscious condition and had pimples all over her skin from which were exuding pus and water. After remaining in the Plainview Hospital for thirteen days, under the care of Dr. Howell, with no apparent improvement, she was removed to the Turner Hospital in Houston, Texas. Dr. Turner made a diagnosis and pronounced her suffering first with exfoliative dermatitis (arsenical), —inflamed and scaling skin; second, Vincent's Angina,—commonly known as trench mouth; third, ptyalism or salivation. She remained in the Turner Hospital at Houston until about November 1st, and from the effects of the treatment by Dr. Howell, her hair fell out; she shed her finger and toe nails; she was affected with lock jaw to the extent that she could open her mouth but slightly and was unable to masticate her food. The damages she sustained, the expenses she incurred, and the pain and anguish necessarily following these conditions were pleaded and testimony introduced thereon. The expert testimony by the doctors agrees that it is not the accepted, standard or proper practice for a physician to diagnose and pronounce one to be afflicted with syphilis without a Wassermann test, a microscopic test or blood smear to ascertain with greater centainty than is possible by such a superficial examination as made of appellant by appellee. It is uncontroverted that Dr. Howell made no such tests, but only looked into the mouth and throat of his patient, swabbed them, and unhesitatingly announced that she was suffering from syphilis; that such is not considered the proper practice by physicians to diagnose such disease; that notwithstanding the inflammation of the eyes, the swelling of the limbs and entire body, and the dermatitis, all of which appeared within about three weeks of the first treatment, Dr. Howell, until September 13th, continued to administer the arsenic and bismuth, although the medical testimony is uncontroverted that when symptoms appear indicating arsenic poisoning, the proper treatment is to immediately discontinue such treatment and give the patient something to counteract the ill effects of such treatment.

The record discloses that in 1934 Miss Gifford consulted Dr. L. C. Wayland of Plainview when suffering from a sore mouth and throat; that he made an examination of her throat and mouth and made a microscopic test of the germ causing the trouble and he found that she was suffering from Vincent's Angina, or trench mouth, for which he treated her and from which she apparently recovered, and that in his examination and test he found no evidence of syphilis. Dr. A. D. Ellsworth of Plainview, Texas, testified that he made a microscopic examination of Miss Gifford on November 5, 1936 and on or about January 22, 1937 he took a specimen of her blood, sent it to a laboratory, and had a Wassermann test made and received a statement or certificate showing what was revealed by the laboratory test, and from his examination of Miss Gifford he found no evidence whatever of a syphilitic condition.

The record shows that Miss Gifford was a practical nurse, and she testified, without objection, that she had been under the treatment of Dr. Kruger of the Lubbock Sanitarium, Dr. L. C. Wayland and Dr. A. D. Ellsworth, both of Plainview, and was under the care of four physicians while in the Turner Clinic and Sanitarium at Houston; that at least two Wassermann blood tests had been made to determine her condition; that none of these physicians had injected arsenic or bismuth into her arms and muscles, and none of them had advised that her condition was syphilitic. St. Louis, B. & M. Ry. Co. v. Davis, Tex.Civ. App., 262 S.W. 923. ·

■ While the rule is that a physician does not insure results, he is required to have such reasonable skill as the profession generally possesses and to exercise such skill with reasonable care and diligence.

■ The appellant offered no testimony and the evidence is undisputed that appellee informed appellant that he could make or have made a Wassermann test; that such test or a microscopic blood test was in common use in Plainview and generally by the profession and was deemed by them

essential in order to diagnose the disease of syphilis; that he made no such test, but relied on the superficial examination of looking into and swabbing the mouth and throat, which was undependable and not relied on by the medical profession to determine the existence of such disease. The evidence raises fact issues as to a negligent diagnosis whether her damage resulted from the treatments of arsenic and bismuth administered by appellee and whether she was afflicted with Vincent's Angina, or trench mouth, when the superficial examination was made by the appellee, rather than with syphilis, and the case should have been submitted to the jury. Edwards et al. v. West Texas Hospital et al., Tex.Civ. App., 89 S.W.2d 801, and authorities cited.

The judgment is reversed and the cause remanded.