**Walter J. LEVERMANN et al., Appellants,**

v.

**L. M. CARTALL et al., Appellees.**

**No. 14377.**

Court of Civil Appeals of Texas.

San Antonio.

July 21, 1965.

---

Morriss, Boatwright, Lewis & Davis, San Antonio, for appellants.

Groce, Hebdon, Fahey & Smith, San Antonio, for appellees.

BARROW, Justice.

This is a malpractice case. Appellants, Walter J. Levermann and wife, Mary D. Levermann, brought two suits, individually and as next friends for their minor son, Larry Dean, seeking damages from appellees, Dr. L. M. Cartall and Dr. H. E. Newby, for the alleged negligence of each in failing to properly diagnose and treat a subdural hematoma sustained by the ten-month-old baby in a fall from a highchair. These two suits were consolidated. It was stipulated that appellees, who were both general practitioners of medicine in Del Rio, were partners at all relevant times. The jury did not find that either of the defendants was negligent in his diagnosis or treatment of the minor, and a take-nothing judgment was entered on this jury verdict.

Appellants seek a reversal and assert that the trial court erred in the following respects: (a) in failing to permit the voir dire examination of each prospective juror to be conducted separate and apart from the panel; (b) in not excusing three jurors for cause, or granting appellants three additional peremptory challenges; (c) for inclusion of an improper and prejudicial instruction in the charge; (d) because of prejudicial argument of appellees' counsel; and (e) in its erroneous admission and exclusion of testimony.

Appellees assert by counterpoint that these points, even if asserting error, are immaterial in that appellants failed to show that any negligent failure on their part to diagnose and treat the subdural hemotoma was a proximate cause of any injuries suffered by appellants. The applicable rule in malpractice cases was stated by the Supreme Court in Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 782, 13 A.L.R.2d 1, as follows:

"It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries."

Appellees' counterpoint presents a "no evidence" point and requires us to review the record in the light most favorable to appellants. Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126; White v. White, 141 Tex. 328, 172 S.W.2d 295.

About 6:30 p. m. on Tuesday, July 19, 1960, Larry was standing in his highchair, which was twenty-one inches high, when it turned over. He cried very violently for fifteen or twenty minutes after this fall and several times during that night. There were bruises on his left hip and left forehead, which were visible several days. The next afternoon he vomited after returning home from a birthday party. Mrs. Levermann testified that after Larry vomited she telephoned Dr. Cartall, who told her that children fall all the time, and that the boy probably had an upset stomach. He gave her a prescription which was given the baby. Larry was very restless that night and after he vomited again late the following day Mrs. Levermann took him to Dr. Cartall. He examined the baby and said all he could find was a red throat, and gave a prescription for it. By Friday, July 22, Larry was weak and could not keep anything on his stomach. Dr. Cartall was telephoned again and he sent suppositories to control the vomiting. On Saturday, July 23, Larry's eyes crossed, with his left eye turning in. They had never crossed before; they remained crossed until August 3, when Dr. Munslow performed an operation and removed fluid from the child's brain. Dr. Cartall came by appellants' home on Saturday morning and after examining Larry said that he was teething.

On Saturday night, July 23, Dr. Newby, who was Larry's regular doctor, returned from out of the city. He was telephoned by Mrs. Levermann and advised of Larry's fall, his drowsiness, vomiting and the medications given by Dr. Cartall. On Sunday morning Dr. Newby came to appellants' home in response to Mrs. Levermann's telephone call, and, after examining Larry and again being advised of the history, including the fall, said that Larry probably had a virus and was dehydrated. Larry was placed in the hospital where he remained until Tuesday, July 26. Dr. Newby told Mrs. Levermann that Larry's crossed eyes were probably a result of his weakened condition. He vomited again on the 27th and Dr. Newby sent medicine to quiet the child's stomach. Mrs. Levermann telephoned Dr. Cartall again on the 27th and he said the history sounded like a deep-seated virus and the treatment of Dr. Newby was proper. On July 28 or 29, Mrs. Levermann again called Dr. Newby who advised continuation of the prescribed medication. On July 31 she called Dr. Cartall and requested the recommendation of a clinic to treat the child. Dr. Cartall suggested that she see a pediatrician in San Antonio.

Shortly thereafter, she wrote down a full history, including the fall, and telephoned Dr. Dimmitt of Uvalde, who had formerly been their family physician. He recommended that the boy be immediately taken to San Antonio and seen by Dr. Munslow. This was done on Sunday, July 31. Dr. Munslow examined the boy and on August 1 did a bilateral subdural tap and removed 90 cc. of fluid from his brain. On August 3, Dr. Munslow performed an operation and cleaned out the subdural hematoma, and Larry was dismissed three days later.

Several months later, Larry started having trouble with his left eye turning out, and was treated by an eye specialist, Dr. Frink, of McAllen. He performed an operation, but the boy still has trouble with his left eye and has little vision in same.

Appellees assume in this counterpoint that there is sufficient evidence to support a jury finding of negligence in their not discovering and treating the subdural hematoma, but urge there is no evidence to show that any damage was done by this delay.

Dr. Hogan, an eye specialist, testified that Larry has suffered nearly a total loss of vision in the left eye and gave the following reasons for the disability:

"Q. Now Doctor, bearing the facts that I have related to you in

mind,[1] I want to ask you whether or not you have an opinion as to the reasonable medical probability of whether the damage found to the left eye is due to long continued intracranial pressure, due to the subdural hematoma?

A. I believe that.

Q. That is your opinion?

A. This the most probable.

Q. And is it or not your opinion that in reasonable medical probability that long continued unrelieved intracranial pressure due to the subdural hematoma is what caused the loss of the sight of the eye, the left eye, rather than damage due to—I mean damage at the time of the fall?

A. That is most probable."

Dr. Terrell, a McAllen pediatrician, who had examined Larry about eight months before the fall, testified that Larry's eyes were normal at that time. Dr. Dimmitt, a general practitioner of Uvalde, testified that a general practitioner of this area should have recognized from Larry's symptoms that there was intracranial pressure and that appellees had not exercised the standard of care in this case of an average general practitioner in this area.

■ The evidence, when viewed most favorably to appellants, amounts to more than a scintilla that the delay in diagnosis and in relieving the intracranial pressure was a proximate cause of some damage sustained to Larry's left eye. Appellees' counterpoint is overruled.

■ The trial court properly defined "negligence" as the failure to use "ordinary care," which is the use of that degree of care "which medical doctors of ordinary knowledge and skill, engaged in the general practice of medicine in Del Rio and the general vicinity thereof, would use in the diagnosis and treatment of the patients under the same or similar circumstances." Bowles v. Bourdon, supra. This definition was followed by a standard definition of "proximate cause." Following this definition was the instruction complained of by appellants: "You are further instructed as a part of the law of this case, that a medical doctor is not an insurer or guarantor of his work; neither is he responsible in law for an honest mistake in judgment, unless such mistake is due to a want of ordinary care, as the term 'ordinary care' has been defined hereinbefore."

Appellants objected to this instruction as being a general charge, being on the weight of the evidence, informing the jury of the legal effect of an honest mistake in judgment, being without support in the pleadings or evidence, and because no issue of honest mistake was submitted in the charge.

■ It is our opinion that this instruction was improperly included in the court's charge, and that the court erred in overruling appellants' objections. The only function of an explanatory instruction in the charge is to aid and assist the jury in answering the issues submitted. Rule 277, Texas Rules of Civil Procedure; Hodges, Special Issue Submission in Texas, pp. 29–30; McDonald, Texas Civil Practice, § 12.-14. This instruction did not refer to any particular issue or term used in the charge and could only be considered by the jury as applying to the case as a whole. It was not necessary to assist the jury in answering any issue. There was no pleading or evidence of "honest mistake." The giving of this instruction was clearly improper. Whether or not this error amounted to such a denial of the rights of appellants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment and thereby entitle appellants to a re-

---

[1]. The hypothetical question as related by counsel contained substantially the same facts as heretofore set forth.

trial under Rule 434, T.R.C.P., presents a more difficult question.

It is seen that the adoption of Rule 277, supra, gave the trial judge greater latitude in the submission of definitions and instructions than that permitted under Art. 2189, R.C.S., in that the rule specifically permits the giving of such "explanatory instructions" as shall be necessary to enable the jury to properly pass upon and render a verdict on the submitted issues, and provides, "in such instances the charge shall not be subject to the objection that it is a general charge."

The rule was considered by the Supreme Court in Boaz v. White's Auto Store, 141 Tex. 366, 172 S.W.2d 481 (1943). After recognizing the greater latitude given the trial judge, it was said: "However, the rule does not authorize the giving of an instruction which is not 'necessary to enable the jury to properly pass upon and render a verdict on such issues'; and which is calculated to prejudice one of the parties before the jury." It was thus held to require a remand where the trial court instructed the jury that the party was negligent in driving in excess of 25 M.P.H.

In Farias v. Gaitan, Tex.Civ.App., 312 S.W.2d 273, wr. ref., n. r. e., this Court held it to be reversible error for the trial court to instruct the jury that defendant's conduct was a violation of a statute, and negligence. In Roberts v. Bush, Tex.Civ.App., 352 S.W.2d 337, wr. ref., n. r. e., it was held to be reversible error to instruct the jury that a person who has testamentary capacity and who is not unduly influenced may dispose of his property by will as he desires. A similar instruction was held improper by the Supreme Court in the recent case of Lindley v. Lindley, 384 S.W.2d 676 (1964), although the case was reversed and remanded for other reasons. See also, Dial Temp Air Conditioning Co. v. Faulhaber, Tex.Civ. App., 340 S.W.2d 82, wr. ref., n. r. e.

■■ The applicable rule is that an instruction which is not necessary to enable the jury to properly pass upon the issues is improper and may be so prejudicial to one of the parties as to require a retrial. Boaz v. White's Auto Store, supra. Appellees urge, and we agree, that this instruction is a correct statement of law, in that generally a medical doctor is not an insurer or guarantor of his work. Graham v. Gautier, 21 Tex. 111, 112; Henderson v. Mason, Tex. Civ.App., 386 S.W.2d 879, no wr. hist.; Shockley v. Payne, Tex.Civ.App., 348 S.W.2d 775, wr. ref., n. r. e.; Gifford v. Howell, Tex.Civ.App., 119 S.W.2d 578, wr. dism.; Turner v. Stoker, Tex.Civ.App., 289 S.W. 190, wr. ref.; 45 Tex.Jur.2d, Physicians and Other Healers, § 120. It is seen that in each of the cases in the preceding paragraph the instruction found to have been improperly included in the court's charge was a correct rule of law.

To determine the probable effect of this improper instruction, we have examined the entire record. It is seen that the issue of negligence was sharply contested. The crucial fact was whether or not appellants told either or both of the appellee doctors of Larry's fall from the highchair. Each of appellees testified that he would have made a neurological exam if he had known of this history. Each denied that he was told of this fall, and the Del Rio hospital record of Larry's confinement from July 24 to 26 corroborates them, in that although a full history is set forth, it makes no mention of a fall or any complaint relating to same. They are also corroborated by the fact that in a telephone call by Mrs. Levermann to Dr. Frink in McAllen on July 27, there was no mention of the fall in her history to him. Dr. Munslow, neurosurgeon, testified that a subdural hematoma is hard to diagnose quickly, and is very rare in head injuries. Under the testimony of all medical witnesses in this case, most of the symptoms Larry had while under the care of appellees are those of a child suffering from a virus infection. There was evidence that the "crossing" of the left eye appeared to be only a "slight" deviation which is not uncommon in infants of Larry's age.

On the other hand, Mr. and Mrs. Levermann each testified unequivocally that each of the appellee doctors was told of Larry's fall several times during the time appellees were treating Larry, and testified that they inquired specifically of each doctor as to whether the turning in of Larry's left eye was related to his fall. Furthermore, it is seen that in the initial conversation with Dr. Dimmitt on July 31, Mrs. Levermann related the fall as a significant item in the history of his case.

It is our opinion, from the entire record, that the instruction that appellees were not insurers or guarantors of their diagnosis or treatment was prejudicial to appellants. The only issues which concerned the jury were whether or not appellees had exercised that degree of care in the diagnosis and treatment of Larry which other general practitioners in this area would use under the same or similar circumstances. With the evidence sharply conflicting on these issues, it is our opinion that this additional instruction by the trial court, that appellees were not insurers or guarantors, was a comment on the case as a whole, in that it related to the care to be exercised by appellees and was reasonably calculated to cause and probably did cause prejudicial harm to appellants so as to require a remand of the case.

In view of a remand, we will only pass upon those questions assigned by appellants as error which are likely to recur upon a retrial.

The argument of counsel must be confined to a discussion of the evidence introduced and counsel may not state their personal opinion of the qualifications of the appellees. Texas Sand Co. v. Shield, 381 S.W.2d 48 (Tex.1964). Further, it is improper to appeal to prejudice by referring to the adverse effect a judgment would have upon the community's need for additional doctors.

It is our opinion that the trial court did not abuse its discretion in overruling appellants' motion to examine the members of the jury panel individually, out of the presence and hearing of the others. The Texas Rules of Civil Procedure are silent on the manner of conducting the voir dire examination, and it has been held that the extent of same is largely within the trial court's discretion. Lubbock Bus Co. v. Pearson, Tex.Civ.App., 277 S.W.2d 186, wr. ref., n. r. e.; Fort Worth & D. C. Ry. Co. v. Kiel, Tex.Civ.App., 195 S.W.2d 405, wr. ref. Appellants' motion was based upon the wide and favorable acquaintance of appellees in Val Verde County and the adverse effect upon the entire panel by various jurors stating their relationship to appellees on voir dire. It occurs to us that such a proposition could be asserted in almost all cases being tried in other than a metropolitan area. In our opinion it would be a backward step in the administration of justice to hold as a matter of law that the voir dire examination must be conducted in these instances as suggested by appellants.

We have examined appellants' points complaining of the admission and exclusion of testimony and find no error in same. Dr. Munslow was qualified to testify to the knowledge and experience of general practitioners in this general area and as to their diagnosis and treatment of subdural hematomas. The testimony of Mrs. Levermann as to her conversation with Dr. Frink of July 27 was admissible as an admission against her interest on the vital issue of whether the fall was a significant part of Larry's medical history during the time in which appellees were allegedly told by her of the fall. Dr. Dimmitt was permitted to testify to the history given him by Mrs. Levermann, but the trial court correctly refused to permit him to bolster her testimony by testifying to what she told him.

The judgment of the trial court is reversed and the cause remanded for another trial.