### WHITFIELD v. TRADERS & GENERAL INS. CO.

### No. 8436.

Court of Civil Appeals of Texas. Austin.

June 2, 1937.

Cecil H. Barnes, of San Angelo, for plaintiff in error.

Newman & McCollum, of Brady, and Lightfoot, Robertson, Saunders & Gano and Claude Williams, all of Fort Worth, for defendant in error.

BAUGH, Justice.

This is a workmen's compensation case. The Industrial Accident Board awarded to J. B. Whitfield compensation for the loss of an eye suffered by him while working as a service man in the shop of the Maytag Southwestern Company at Brady, Tex. That company was a subscriber under the Workmen's Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.) and the defendant in error was the insurer. The insurer appealed from such award to the district court. The appeal was tried to a jury, but at the close of the evidence the court instructed a verdict against the claimant on the grounds that he had not shown himself to be an employee of the Maytag Southwestern Company at the time he received his injury within the terms and meaning of the compensation act. The first question presented, therefore, is whether there was any competent evidence to go to the jury on this issue. We have reached

**360**

the conclusion that there was, and that the trial court erred in instructing a verdict in favor of the insurance carrier.

L. L. Whitfield, father of the injured claimant, was the "authorized service man" of the Maytag Company at Brady, under a written contract of employment with said company. It seems that said company also had authorized salesmen for its products in different counties and communities in the state, but it is not shown whether said company had such separate salesman at Brady or not. Under his contract with said company, L. L. Whitfield, in addition to his duties as service man, was authorized to make sales of Maytag products and to canvass that territory for that purpose. According to his testimony, at the time the injury occurred, he was spending most of his time in the field selling Maytag washing machines, on which sales he was paid a commission. On the machines so sold, the company furnished the purchaser, free of cost to him, service for a period of one year. This service was furnished by L. L. Whitfield on behalf of the company. The first provision of the contract between L. L. Whitfield and the Maytag Company obligated him "to render promptly such service to Maytag owners as may be necessary, and to do everything in his power to keep Maytag owners in his territory satisfied. * * * To render such free service as designated by the company or by the local manager as may be necessary, without cost whatsoever to the company." Other provisions of said contract required him to use his own car at his own expense; not to incur any expense in the name of the company; to keep a sufficient stock of Maytag parts, accessories, etc., on hand, same to be purchased only through said company or under its authority; to be guided by all rules and regulations of the company as to service, prices for parts, etc.; to make a $1,000 bond in favor of the company; and to make all reports the company might require. The company bound itself to sell him parts, etc., at a discount; authorized such service man to retain all moneys collected for parts, service, etc.; to permit the use of the company's headquarters without charge to store parts and render the service required; and to send out material and information as to services to Maytag owners. It was mutually agreed in said contract that it might be terminated at any time by either party; that in case of such termination the company would, at its option, take over all parts and materials on hand at cost; that the service man could devote as much time as possible to sales work so long as it did not interfere with other salesmen, nor prevent the rendering of satisfactory service to Maytag owners in his territory.

It does not appear to be questioned that L. L. Whitfield was an employee of the Maytag Southwestern Company within the meaning of the compensation act and under the policy carried by defendant in error. If so, such question was settled against the insurer in Traders' & General Ins. Co. v. Williams (Tex.Civ.App.) 66 S.W.(2d) 780, involving the same insurer and a Maytag Southwestern Company's salesman, who was held to be such employee. See, also, Texas Employers Ins. Ass'n v. Wright (Tex.Civ.App.) 96 S.W.(2d) 744, and cases therein cited. The question here involved, therefore, is whether L. L. Whitfield had implied authority to employ his son in furtherance of the Maytag Company's business; or whether said company authorized such employment, or recognized the services rendered after notice or information imparted to it that J. B. Whitfield was serving said company in the capacity of shop foreman on the company's premises at Brady, and was rendering repair and upkeep services on Maytag washing machines in its behalf.

The secretary-treasurer of the Maytag Company testified that only one authorized service man was ever appointed in any city; that such men were required to make written application for such appointment and to give a bond to the company; that only he was authorized to employ such; that he had never so employed J. B. Whitfield in that capacity; and that J. B. Whitfield was not shown on their books as an employee, and had never been paid anything by the Maytag Company. But these facts were not, in the light of other evidence in the record, conclusive on this question. On the other hand, it was shown that inter-office communication passed between the headquarters' office of said company at Dallas and the local office at Brady, one dated 4/18/33, as follows:

"Maytag Southwestern Company,
"Inter-Office Communication
"From Dallas.          Date 4-18-33
"To Brady      Attention Mr. Whitfield
          Subject  Shop Boys
"In order that our records may be up to date at all times we ask that you please send us a report of employees each week,

even if you only list yourself on this report.

"If H. L. Hunt and J. B. Whitfield are reported on your report of employes, it will be necessary that you send signed cards and bond applications for them."

There was also introduced in evidence a report, obviously made by L. L. Whitfield to the company in response to the request of 4/18/33 above quoted, the following:

"Manager's Weekly Report of Employees
Miscellaneous Employees
Office Help, Service Men, Etc.

| Name | Mailing Address | Position | Amt. Salary. |
|------|-----------------|----------|--------------|
| J. B. Whitfield | Brady | Shop Man | 10.00 wk— |
| Willard Carroll | Brady | Helper | 5.00 wk— |

County Manager   L. L. Whitfield.
Manager's Weekly Report of Employees.
County Operation Brady. Week Ending 4-29-33.

| Active Salesmen | Town | Is He Using Car (Yes or No) |
|-----------------|------|------------------------------|
| L. L. Whitfield | Brady | Yes." |

And again on 5/26/33, the following request was shown to have been sent by the Dallas office to the Brady office:

"Maytag Southwestern Company
"Inter-Office Communication
"From Dallas                    Date 5-26-33
"To Brady     Attention Mr. Whitfield
    "Subject Report of Employees.

"Please let us have your report of employes each week regardless of whether or not you have any other salesmen to report. Also please show in the column provided, whether or not he is using car.

"Your cooperation will be greatly appreciated.

                    "Thanks—
                    "Signed E. Ranspot."

■ While it was shown that E. Ranspot was merely an employee in the Dallas office without authority to employ any one, it was also shown that such communications were sent and received by her in the regular discharge of her duties; and were doubtless the reports required by the headquarters of its local representatives, and those referred to in the contract the Maytag Company had with L. L. Whitfield. And from the report made by him to the company on 4/29/33, it might reasonably be inferred that L. L. Whitfield had become a regular salesman for the company at Brady, and that the servicing of Maytag machines had been turned over to J. B. Whitfield as shop man and Willard Carroll as helper. Under the requirement of L. L. Whitfield's contract, as above quoted, to keep Maytag owners satisfied and to render for a period after sale a free service to purchasers; the requests from the company for detailed reports as to his employees (manifestly for the benefit of the company); and the report of L. L. Whitfield obviously on the forms furnished by the company for that purpose, in which he showed J. B. Whitfield as an employee in the service department, we think the jury could reasonably have found that L. L. Whitfield had implied authority to employ on behalf of the company needed assistance in the service department; and further that the company knew of and acquiesced in his employment of J. B. Whitfield for that purpose. At any rate the evidence and the terms of the contract were sufficient to make a jury issue on the question of whether the claimant was an employee of the Maytag Company within the meaning of the compensation act. Neither express authority to L. L. Whitfield to employ his son, nor the method nor source of his compensation are wholly determinative of this question.

■ No question as to L. L. Whitfield being an independent contractor, nor that J. B. Whitfield was a mere volunteer is here involved, as was true in most of the cases cited and relied upon by defendant in error. Nor can there be any question, we think, but that the injured claimant was laboring at the time of his injury in furtherance of the Maytag Company's business and in performance of the duties imposed by contract between the company and his father. Unquestionably, his father may be treated as an employee within the meaning of the compensation act. Traders' & General Ins. Co. v. Williams, supra; Maryland Casualty Co. v. Scruggs (Tex.Civ.App.) 277 S.W. 768. His authority to employ others to assist him when needed, in furtherance of his master's business, especially when done with the knowledge, consent, or acquiescence of the master, may be implied. A full discussion of this question with citation of numerous authorities discussing it is to be found in the Scruggs Case, supra, and the rule there announced is applicable here. We refer to that case without reiteration of the reasons therein stated in support of it.

The question of whether J. B. Whitfield was an employee of the Maytag Company at the time of his injury on June 1, 1933, being one of fact; and there being, in our

opinion, sufficient evidence to go to the jury on that issue, the trial court's judgment must be reversed.

Nor do we sustain the defendant in error's contention that the trial court's judgment should be sustained because there was no proof that the applicant ever filed a claim for compensation with the Industrial Accident Board. It has been repeatedly held that in proceedings of this character, being statutory, it is incumbent upon the claimant to show a compliance with the statutory requirements as to notice of injury and filing of his claim with the board. But on appeal to the court from an award of the board, the trial is de novo, and the proceedings before the board are admissible in evidence merely for the purpose of showing jurisdiction. Such copy of the claim as filed would be no evidence on the trial, of the facts therein stated. The court acquires no jurisdiction unless the board has acted upon such claim, or unless the board itself had jurisdiction to act upon it. The cases cited by defendant in error in support of its contention are cases wherein both the jurisdiction of the board and of the court to act upon claim were attacked. No such question is here presented. Nowhere in the pleadings of either party is the issue of jurisdiction either of the board or of the court to adjudicate said claim questioned. On the contrary, it is in effect conceded. The sole ground of the insurer's appeal from the board's award was, not that the steps required by the compensation act had not been complied with, but that J. B. Whitfield was not an employee of the Maytag Southwestern Company. This was the theory on which the case was tried and the ground on which the judgment was rendered. Whether the insurer, having invoked the jurisdiction of the court on the award of the board without questioning the jurisdiction of that body to pass upon plaintiff in error's claim, can be heard to raise this question for the first time on appeal, in the absence of any objection so made in the trial court, or not, we think this contention cannot be sustained. In American Employers' Ins. Co. v. Scott (Tex.Civ.App.) 33 S.W.(2d) 845, 847 (writ ref.), wherein Chief Justice Hickman dissented on this exact contention, it was held that the recitals in the award of the board "supplied the requisite evidence, (1) to show that there was a claim before the board, and (2) that such claim was one within the jurisdiction (on appeal) of the district court." While in that case the issue was as to the amount of the claim, the same rule would apply with equal force on the issue as to whether such claim had been filed with the board. That the claim was timely filed is shown both by the pleadings of the insurer in its appeal to set it aside and by the award itself introduced in evidence for jurisdictional purposes, in this: It was alleged that the injury occurred on June 1, 1933, and that the award of the board was made on October 25, 1933, less than six months thereafter. Millers' Indemnity Underwriters v. Heller (Tex.Civ.App.) 253 S.W. 853, 857 (writ ref.).

For the reasons stated, the judgment of the trial court will be reversed and the cause remanded for another trial.

Reversed and remanded.