**TRADERS & GENERAL INS. CO. v. MAY.**

· No. 5501.

Court of Civil Appeals of Texas. Amarillo.
Jan. 4, 1943.

Rehearing Denied Feb. 1, 1943.

Lightfoot, Robertson & Gano, of Fort
Worth (E. B. Robertson, of Fort Worth,
of counsel), for appellant.

Warlick & Bunnenberg, of Vernon, for
appellee.

STOKES, Justice.

This suit was instituted by appellee, D.
B. May, as an appeal from an adverse rul-
ing of the Industrial Accident Board upon
his claim against appellant, Traders &

General Insurance Company, for compensation for an injury and resulting incapacity sustained by him on the 21st of January, 1941. He alleged that the injury was sustained while he was performing duties in the course of his employment with the Herring National Company, a corporation, of which appellant was the compensation insurance carrier. The case was submitted to a jury upon special issues, and upon the verdict returned by them the court entered judgment in favor of appellee for the total sum of $678,35, consisting of $163.64 as compensation and $514.71 for medical, hospital, and nursing expenses incurred by him.

Appellant presents the case in this court upon three assignments of error, contending, first, that the court erred in entering any judgment against it because the undisputed evidence showed that appellee was not an employe of the Herring National Company at the time of the injury and therefore not covered by the policy of compensation insurance; secondly, that the court erred in entering any judgment against it for partial incapacity because there was no finding of the jury nor evidence to support such a judgment; and, thirdly, that error was committed in entering judgment against it for medical and hospital bills, doctors' bills, and the amount paid to nurses because the court had no jurisdiction of such claim and because there was no finding of the jury nor evidence to support a judgment therefor.

The testimony showed that M. K. Berry was a stockholder and secretary of the Herring National Company and had been since its organization in 1926; that the company owned a building at Vernon known as the Herring National Building which constituted its only assets and in which the Herring National Bank maintained its offices and banking house. The building was five stories in height and was what is generally known as an office building. From the time the building was erected until the trial, Mr. Berry was engaged by the company as manager of the building at a salary of $20 a week, his duties being to supervise the janitor work, elevator service, and attend to such other matters and duties as became necessary for the proper operation and care of such a building. He was president of the bank in the later years and after the death of his father he took over the management of the family estate. He also had charge of another estate of considerable magnitude all of which, including the management of the building, involved considerable bookkeeping and outside duties such as renting and looking after farms and other rental property. In January 1940 these combined duties became so heavy that Mr. Berry was put to the necessity of employing an assistant and he employed appellee who was thereafter recognized and designated as his secretary. He started appellee on a salary of $125 a month which was increased within a reasonable time after his employment and was paid by Mr. Berry out of his own funds. In addition to looking after the farms and other property belonging to the estates being managed by Mr. Berry and keeping the books and accounts incident thereto, the duties of appellee required him to manage and supervise the building and keep the books and accounts with the tenants. It was also his duty to supervise the janitor and elevator services and he had authority to employ and discharge janitors and other servants employed in the general operation, upkeep, and care of the building. When Mr. Berry was engaged as the manager of the building he was given authority to employ and discharge any help or assistants that might be needed in the general care and management of the building without the necessity of consulting the board of directors or any other person, and at the first meeting of the board of directors after the appellee was employed, Mr. Berry informed the board of directors of his action in employing appellee and explained fully the duties he had committed to appellee. The record further shows that at meetings of the board of directors thereafter the appellee's employment and services in connection with the building were discussed and on some of these occasions members of the board commended him for the efficiency with which he was discharging his duties.

The testimony showed that appellee's name was not included in the report to appellant of the employes engaged by the Herring National Company. It further showed that Mr. Berry reported appellee to the Social Security Board as his employe and that the Herring National Company never at any time so reported him or paid any portion of the dues or assessments in connection therewith.

On the twenty-first of January, 1941, one of the two young women who were operating the elevators in the building was excused from her duties by appellee upon her request that she be permitted to return home on account of sickness of some of the members of her family. About one o'clock in the afternoon appellee entered the lobby and found a number of people waiting to take the elevator. Both of the elevator doors were closed, and appellee testified he thought the regular operator had returned home. He thereupon unlocked the door to the elevator shaft for the purpose of operating the elevator in the absence of the regular employe and relieving the congestion in the lobby, as he was accustomed to doing under such circumstances. Upon opening the elevator door and without looking to see whether the carriage was standing immediately inside, he looked around, invited some of those waiting to enter the elevator, and then stepped into the door. The carriage of the elevator was standing at one of the upper floors, leaving the shaft at the lobby entrance open, and appellee fell into the shaft and was precipitated to the floor of the basement below, thus sustaining the injury which formed the basis of his suit.

■ While it is true, as contended by appellant under its first proposition, that appellee was employed by M. K. Berry and otherwise had no express contract directly with the Herring National Company to perform the duties and services he was performing at the time he was injured, it does not follow that he was not an employe of that company as contemplated by our workmen's compensation law. The testimony is conclusive that he was laboring and performing services for and on behalf of the Herring National Company at the time he was injured and that he was performing such services under contract between him and the secretary of that corporation. Moreover, he was discharging the identical duties that the secretary, under his contract as manager of the building, was obligated to perform on behalf of the company and was so engaged as helper or assistant of the company's building manager. It cannot be questioned that Mr. Berry was the employe of the Herring National Company at the time and the testimony is undisputed that he had authority to engage such employes as were necessary for the proper operation and care of the building. His employment of appellee as assistant or helper in connection with his duties as manager of the building was known to the board of directors of the Herring National Company and they acquiesced in, even approved, the arrangement.

■ The rule is well established in this state as well as many other jurisdictions in this country that when an agent, with the authority of his principal, express or implied, employs help for the benefit of his principal's business, the relation of employer and employe between such help and the principal is thereby created and the question of whether the assistant or helper is promised any remuneration is immaterial. Maryland Casualty Co. v. Scruggs, Tex.Civ.App., 277 S.W. 768; Whitfield v. Traders & General Ins. Co., Tex.Civ.App., 106 S.W.2d 359; Eldridge v. Citizens' R. Co., Tex.Civ.App., 169 S.W. 375; Paducah Box & Basket Co. v. Parker, 143 Ky. 607, 136 S.W. 1012, 43 L.R.A.,N.S., 179; Carter v. Woods Bros. Const. Co., 120 Kan. 481, 244 P. 1; Foose v. Waverly Coal Co., Mo.App., 239 S.W. 874; Larson v. Independent School Dist., 53 Idaho 49, 22 P.2d 299; Michaux v. Gate City Orange Crush Bottling Co., 205 N.C. 786, 172 S.E. 406; Lesser v. Holland Farms, 248 App.Div. 323, 289 N.Y.S. 24; Schneider on Workmen's Compensation Law, Second Edition, Vol. 1, page 204.

The fact that appellee's salary was paid by M. K. Berry out of the latter's personal funds does not affect the rule in any way. In the case of Whitfield v. Traders & General Ins. Co., supra, the claimant, J. B. Whitfield, was employed by his father to assist him in conducting the business of the insured which he was conducting in a specified territory. While engaged in the furtherance of the insured's business, J. B. Whitfield was injured and made claim for compensation under the workmen's compensation law. He was never directly employed by the company nor entered on its payroll. It is evident from the statement of the case that L. L. Whitfield paid the wages of the claimant out of his own funds and the opinion reveals that his employment was known to the officers of the insured company. The Court of Civil Appeals of the Third District, in passing upon assignments of error similar to those here presented by appellant, said [106 S.W.2d 361]: "Nor can there be any question, we think, but that the injured claimant was

laboring at the time of his injury in furtherance of the Maytag Company's business and in performance of the duties imposed by contract between the company and his father. Unquestionably, his father may be treated as an employee within the meaning of the compensation act. * * * His authority to employ others to assist him when needed, in furtherance of his master's business, especially when done with the knowledge, consent, or acquiescence of the master, may be implied. A full discussion of this question with citation of numerous authorities discussing it is to be found in the Scruggs case, supra, and the rule there announced is applicable here. We refer to that case without reiteration of the reasons therein stated in support of it."

The "Scruggs case" referred to was Maryland Casualty Co. v. Scruggs, supra, 277 S.W. 768, which was a case in which George N. Scruggs had employed his son under similar conditions. The son was killed and the parents filed with the Industrial Accident Board a claim for compensation against the appellant. The contention was made by the insurance carrier that George Scruggs, Jr. was not an employe of its insured and was therefore not covered by the compensation policy. In passing upon the question thus raised, this court held that an agent who with authority, expressed or implied, employs help for the benefit of his principal's business, thereby creates the relation of employer and employe between such help and his principal. A long list of authorities in this and other jurisdictions is cited and the rule seems to be as well established as a rule of law could be. It was the rule under the common law and our workmen's compensation statutes have made no change in it.

■ Appellant further contends under these assignments of error that appellee could not be considered an employe of the Herring National Company because a large portion of his duties were to look after and attend to matters arising in connection with the estates represented by M. K. Berry and other matters of private concern to Mr. Berry. It says that these outside duties which had nothing to do with the affairs of the Herring National Company but were, nevertheless, included in his contract of employment and consumed a large portion of appellee's time, removed him from the class of employes contemplated as legitimate claimants under our workmen's compensation law. The fact that under his contract of employment appellee was charged with these extra duties and that they consumed a portion of his time and efforts would not affect his right to compensation, nor appellant's liability therefor, for an injury and incapacity resulting therefrom which was suffered by him while in the course of his employment by the appellant's insured. There is no question that appellee received the injury which resulted in the incapacity for which he sued while he was engaged in the course of his employment by the Herring National Company, the insured under the policy sued upon, and appellant was therefore liable to him for the compensation therein provided. Fidelity Union Casualty Co. v. Carey, Tex.Com.App., 55 S.W.2d 795; Block v. Ætna Casualty & Surety Co., 138 Tex. 420, 159 S.W.2d 470.

■■ The second point urged by appellant is that the court erred in the manner in which the claim for partial incapacity was submitted to the jury. Under these special issues the jury found that appellee was incapacitated to the extent of 35% from March 3, until April 10, 1941, and 25% from April 10, to July 10, 1941. Appellant contends that the injury being a general one and not a specific injury, the jury should have been required to find the difference in the earning capacity of appellee before the injury, and his earning capacity during the period of partial incapacity. Appellee counters that this matter was not presented to the trial court by appellant in its motion for a new trial and, therefore, it can not be heard to complain of it in this court. Appellant bases its point upon the twentieth paragraph of its motion for a new trial which is: "The court erred in entering judgment herein in favor of the plaintiff and against this defendant in the amount decreed for the reason that such judgment is excessive in that same is improperly computed on the wage rate herein and, further, in that same improperly includes therein amounts and items not supported by the evidence."

Rule No. 374, Texas Rules of Civil Procedure, provides that the motion for a new trial shall constitute the assignments of error on appeal, and Rule No. 321 provides that each ground of the motion shall be stated "in such way as that the point of objection can be clearly identified and understood by the court." The assign-

ment of error in the motion for a new trial makes no reference to the error assigned under appellant's second point. It merely complains that the amount decreed by the judgment is excessive because it is improperly computed on the wage rate and that the judgment improperly includes amounts and items not supported by the evidence. The purpose of the rule is to require litigants to present to the trial court in plain and unambiguous language the exact error assigned so that the trial court may be apprized of the error of which complaint is made and act with untrammeled enlightenment upon the motion for a new trial. Under the provisions of Rule 322, we are not authorized to consider the point here presented by appellant because it is not supported by a proper assignment of error.

The third and last proposition presented by appellant is that the court erred in entering judgment for medical services, hospital and nursing expenses, and medicines. It contends, first, that the claim for these expenses was not filed by appellee with the Industrial Accident Board but was filed, presented, and acted upon by the Board as a claim filed by and for Vernon Clinic Hospital; that the claim was rejected by the Industrial Accident Board and no appeal having been prosecuted therefrom by the Vernon Clinic Hospital, the court had no jurisdiction of it; secondly, it contends that there was no finding of the jury nor evidence to support a judgment for those items.

We find no merit in these contentions. The testimony shows without dispute that these items of expense were incurred by those who had authority to represent appellee under the circumstances; that they were incurred for him and on his behalf; that after he regained consciousness he acquiesced in and approved all of them; and that appellee was unquestionably liable for each and all of them. It is further shown that bills for these expenses were presented to appellee by the Vernon Clinic Hospital and that he paid them out of his own funds before the Industrial Accident Board passed upon the claim. The testimony also shows that appellee in person mailed the account to the Industrial Accident Board to become a part of his claim for compensation. The business manager of the Vernon Clinic Hospital testified without dispute that the hospital never intended to file any claim with the Board and that it did not do so and that it

looked to appellee alone for payment of these expenses. Moreover, the award of the Industrial Accident Board indicates plainly that the Board did not consider the claim as one filed by or for the Vernon Clinic Hospital but as one filed by appellee and rejected it as such. An appeal was duly prosecuted by appellee to the District Court of Wilbarger County and that court therefore obtained jurisdiction of the claims here involved the same as it did of appellee's claim for incapacity as a result of his injury. Texas Indemnity Ins. Co. v. Williamson, Tex.Civ.App., 109 S.W.2d 322; Ætna Life Ins. Co. v. Culvahouse, Tex.Civ.App., 10 S.W.2d 803.; Maryland Casualty Co. v. Moore, Tex.Civ.App., 74 S.W.2d 769.; Id., 129 Tex. 174, 102 S.W.2d 1118.

In reference to appellant's second contention under these assignments, the evidence was abundant and undisputed in support of appellee's claim for medical and hospital services. There was, therefore, nothing to submit to the jury in regard to them. Appellant contends, however, that under our compensation law the insurance company is entitled to notice and an opportunity to furnish medical and hospital services to an injured employe and that neither the employe nor any person who furnishes such services is entitled to recover for them unless the insurance company has failed or refused to furnish them. It says that, there being no evidence that appellant refused to furnish these items or that it was requested to do so by any authorized person, the court was without authority to include them in the judgment and permit appellee to recover the amounts represented by them. The record shows that all of these expenses were incurred during the first four weeks after appellee received his injury, and the law, Art. 8306, sec. 7, Vernon's Ann.Civ.St. provides that the insurance company shall furnish reasonable medical aid, hospital services, and medicines during the first four weeks of the injury. It further provides that if the association fails to furnish the same as and when needed during such time, after notice of injury to the association or subscriber, the injured employe may provide such medical aid, hospital services, and medicines at the cost and expense of the association. The testimony shows without dispute that appellant was given notice of the injury immediately after it occurred, either the

same afternoon or the next day. The employer had immediate notice of the injury, because its secretary, M. K. Berry, was in the lobby at the time it happened and assisted in removing appellee from the shaft of the elevator and conveying him to the hospital. Appellant does not claim that it offered to furnish these services and it having failed to furnish them, after having had notice of the injury, appellee and those representing him in the circumstances were authorized under the above-mentioned article and section to incur on his behalf, and as an expense to be paid by appellant, the doctors' fees and hospital and medical bills that were included in the judgment.

We have carefully examined all of the assignments of error and contentions made by appellant and find no reversible error presented by any of them. The judgment of the court below will therefore be affirmed.