Carl L. WEISER et ux., Appellants,

v.

Dr. William R. HAMPTON et al., Appellees.

No. 15472.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

July 3, 1969.

Rehearing Denied Sept. 11, 1969.

Second Rehearing Denied Oct. 9, 1969.

**225**

as neurosurgeon and Dr. William R. Hampton as orthopedic surgeon. The spinal column was fused with bone and stabilized by the use of Harrington metal rods. On July 27, 1964, a part of the Harrington device was removed by Dr. Hampton, assisted by Dr. Craig Poindexter, who was a resident doctor at the hospital. In October of 1964 the remaining portions of the Harrington device were removed by other surgeons. Appellants had no complaint about the conduct or professional skill of the surgeons performing this operation.

On November 26, 1965, the plaintiffs' original petition was filed. In the amended petition, on which the case was tried, the plaintiffs alleged that the laminectomy was performed on Mrs. Weiser without her informed consent; the Harrington rods were placed in her back without her knowledge or informed consent; that the doctors performing this operation secured her consent by misrepresenting the procedures to be used constituting fraud; that a portion of the Harrington device was removed by the third operation without her knowledge or informed consent; that all of the operations were negligently performed and proximately caused her injury; and that Dr. Hampton was negligent in failing to take post-operative x-rays following the surgery of July, 1964.

By Special Issue No. One the jury found that a reasonable medical practitioner of the same school of medicine as defendants practicing in Harris County, Texas, in November of 1963, in the exercise of ordinary care, would have informed a patient to be operated for a fusion, that such fusion might be additionally stabilized by the use of two Harrington distraction struts (rods), one on each side of the spine. In answer to Special Issue No. Two the jury did not find from a preponderance of the evidence that Dr. William Hampton failed to inform Mrs. Weiser that such fusion "might" be additionally stabilized by the use of two Harrington devices.

Appellants attack the answer to Special Issue No. Two as being supported by no

John H. Holloway, Houston, for appellants.

Andrews, Kurth, Campbell & Jones, Frank B. Davis, Houston, for appellees.

COLEMAN, Justice.

This is a medical malpractice case. Suit was filed against four doctors who participated in three operations on the back of appellant Lois Weiser. The case was submitted to the jury as to two of the doctors. After receiving the jury verdict the trial court entered a judgment in favor of all the defendants.

Involved in this appeal are questions concerning informed consent to medical treatment, negligence in diagnosis and treatment, limitations, and prejudicial jury argument.

Because of injuries not related to this case, Dr. Pedro Caram, assisted by Dr. Edward L. Wall, did a complete laminectomy on Mrs. Lois Weiser in March of 1963. Subsequently Mrs. Weiser was involved in an automobile accident. Thereafter, in November of 1963, she underwent surgery to accomplish a spinal fusion. This operation was performed by Dr. Caram

evidence of probative force and as being contrary to the great weight and preponderance of the evidence.

█ In response to these points appellees state that since appellants had the burden of proof, to prevail on these points it is necessary that they contend that the evidence establishes their position as a matter of law. In support of this contention appellees cite Smith v. Safeway Stores, Inc., 433 S.W.2d 217 (Tex.Civ.App.—Tyler, 1968, error ref., n. r. e.). The court held that where a jury returns a negative answer to an issue on which the proponent has the burden of proof, the jury's negative answer need not be supported by affirmative proof. It stated that in such a situation "it avails the complaining party nothing to assert that a negative answer is without support in the evidence or is not supported by factually sufficient evidence. Under these circumstances, the complaining party is placed in the position of having to contend that the evidence establishes an injury as a matter of law." The court, however, held that where the point is presented that the issue is contrary to the great weight and preponderance of the evidence, it is necessary to determine the question after a review of all of the evidence.

█ Appellants' Point One is denied on the authority of Smith v. Safeway Stores, Inc., supra. In consideration of Point Two the entire record has been reviewed. Mrs. Weiser testified that Dr. Hampton did not discuss with her the use of a metal device in her back. Dr. Hampton testified positively that he explained the proposed operation to her and told her on several occasions that if it appeared beneficial he would use metal rods on either side of the spine and "if it appeared that it added stabilization, and seemed to improve the condition, I would even use those in her case." He also testified that "he felt that he needed to tell her that they would be metal rods placed across the fusion site for stabilization," and that he told her that several times. He testified that he talked to her about the use of the rods several times, and did not

know which time Dr. Caram was present. While appellants contend that the weight to be given this testimony was weakened by certain testimony given by Dr. Caram, in view of this testimony by Dr. Hampton, such a conclusion does not necessarily follow. The answer made by the jury to the issue submitted is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong.

By Points Three and Four appellants contend that there was no evidence to support the answer made by the jury to Special Issue No. Five, and that the answer is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

In answer to Special Issue No. Four, the jury found that a doctor "would have disclosed to a patient that the Harrington metal instruments, if used, as an adjunct to a fusion operation, might have to be removed at a later time." In answer to Special Issue No. Five, the jury refused to find that Dr. Hampton "failed to so advise Mrs. Weiser prior to surgery."

Point Three is overruled for the reason that it is not established as a matter of law that Dr. Hampton "failed to so advise Mrs. Weiser." Mrs. Weiser testified that she did not know that the doctors contemplated using metal in the fusion operation and that she was not told of the possibility that the metal might have to be removed by a subsequent operation. Dr. Hampton testified that he recognized as authoritative a statement in an article by Dr. Paul Harrington that metal rods (such as the ones used in this operation) are tolerated by the body and "can be used in direct contact with the axial skeleton for a reasonable period of time, one to five years." When Dr. Hampton was asked why he didn't tell her that, he stated: "I didn't put a year on it. I told her if she couldn't tolerate it for any period of time, it could be removed." In answer to another question, he stated: "Well, after I had just told her that if it had to come out at all that it could come out, * * *" He also testified that when she first came

to him about the small knot on her back, he told her that it was just one of the top positions of this metal rod sticking up and "it could be removed just like I told her before." Mrs. Weiser's testimony on this point was related to her testimony that she was not told that metal was to be used and this testimony was denied. The denial had the effect of weakening her testimony that she was not informed of the possibility that the metal might have to be removed. Considering the entire record, the answer of the jury to Special Issue No. Five is not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

■ Predicated on an affirmative answer to Special Issue Four, the jury found that Dr. Pedro Caram failed to "so advise Mrs. Weiser prior to surgery." They were then asked whether they found from a preponderance of the evidence that "such failure, if any, was a proximate cause of any damage to Mrs. Lois Weiser." This issue (6B) was answered, "We do not." Appellants contend that this answer is supported by no evidence and that it is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. These points are overruled. The answer is supported by the evidence that Dr. Hampton explained to Mrs. Weiser that the metal might have to be removed. The jury was justified in believing that Mrs. Weiser knew the contemplated procedure and that the failure of Dr. Caram to explain it to her also would not have caused her to withhold her consent to the operation. If she in fact knew that metal might be used in stabilizing her spine, the jury was free to determine that it made no difference which doctor told her about it.

■ In answer to Special Issue No. Seven the jury found that a reasonable medical practitioner of the same school as defendants, practicing in Harris County, Texas, under the same or similar circumstances, in the exercise of ordinary care for their patients, would have disclosed to a patient the probable dangers or risks

associated with the removal of only a portion of the right Harrington device, and probable complications which might arise therefrom, but, in answer to Special Issue No. Eight failed to find that Dr. Hampton did not so advise Mrs. Weiser prior to surgery. The answer to Special Issue No. Eight is attacked as being supported by no evidence and as being so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust.

Dr. Hampton testified that there were no risks or complications associated with the removal of only a portion of the Harrington device. It is undisputed, therefore, that he did not tell her of any probable risks, dangers, or complications associated with the removal of a portion only of the device. The jury's answer to Special Issue No. Eight must have been based on their opinion that appellants failed to show by a preponderance of the evidence that there were *probable* risks or dangers, or *probable* complications, associated with the operation. This is a question which one untrained in medicine could not answer. It was incumbent upon appellants to show by competent medical testimony the probable risks, dangers, or complications.

Dr. Hampton testified that he did not consider it probable that the rod could migrate into a position where it would exert pressure on the spinal cord, and cause injury to Mrs. Weiser, although he recognized that the position of the rods could shift.

Dr. Edward Smith testified that if part of the rod was cut off the remaining part would migrate up until it comes out of the shoe and "then probably won't migrate any further." He testified that it would be very unlikely that it could migrate into the spinal canal. He testified from x-rays taken after the rod was cut off that the rod was not in a position where it could in reasonable medical probability cause damage to the spinal canal. From his examination of the x-rays he didn't believe the rod lay in the spinal canal.

Dr. Caram testified that if the hooks on the rods got disengaged and get across the spinal canal, it could probably cause some damage to the patient. He further testified that the portion of the right rod left in Mrs. Weiser's body when the knot was removed was "fixed with the scar tissue around it," and that nothing would happen as a result of movement with the body. He testified that if the rod should go into a position across the spinal canal, "which I doubt if it would go," it might come in contract with the dura and that it could interfere with the flow of the fluid inside of the sac. He also testified that if the rod "comes in contact" with the spinal cord "it may cause some irritation of the spinal cord," which would result in hyperactive reflexes, tingling sensation in the legs and numbness. He testified that he did not think the rod was inside the spinal canal and that unless the rod was pressing on the nerve itself nothing in the lower extremities would be affected. He also testified that the fact that only one rod was attached to the spine would not cause a bowing of the spine.

Dr. Bruce Cameron and Dr. George Ehni performed the operation during which the rods were finally removed. Dr. Cameron testified that Dr. Ehni actually removed the rods and dictated the report for the hospital records, and that he had reviewed the report and it was true and correct. He testified that there was some compression by the rod as it lay in Mrs. Weiser's back. He testified that at the time of the surgery the right rod was in the laminectomy site in the cord area and was lying up against the dura. He said: "Well, it's not the position you want it to be in. But it is a position it can get into sometimes."

Dr. George Ehni testified that after viewing a myelogram and examining Mrs. Weiser it was his opinion that partially emergent nerve roots at the level of the old injury were being affected "either as a result of one of these rods, the right one I believe, that seemed to be in the spinal canal, rather than just alongside of it, or scarring, or something associated with this injury and these operations." It was his opinion that there was a complete block of the spinal canal "where she had a fractured vertebra and a deformity and a rod in the canal." He had "some degree of belief" that the rod was accounting for her neurological abnormality. During the operation he found that the rod lay within the spinal canal at the level of the fracture of the 12th thoracic vertebra, and he "thought that it was likely to be a source of interference of function and it should come out." Tests were made after the removal of some scar tissue and the rod, and he "was of the opinion that the removal of the rod may have improved the room available to the cord and that no further opening, or trying to take away scar tissue should be done." He testified that Mrs. Weiser suffered pain and damage as a result of the operation to remove the rods. He testified that he did not know what influence the cutting off of the rod had on allowing the rod to be in the spinal canal and that he was not saying that it had any influence. He said that if on an x-ray examination a rod looked like it wasn't where he had left it, he would want to make further investigation to see whether it continued to migrate. He further testified that he was not an orthopedist and he had never "put in these rods," and that he did not know "how much these things are supposed to move."

It appears from the medical testimony that the only risks or complications associated with the removal of part of a rod is the risk of injury caused by the migration of the rod. There is no testimony that there was a greater risk of migration to be expected if the rod was cut off as compared to the risk of migration of a rod which has become loose for some other reason. There was no direct testimony that migration of the partial rod was probable and there was direct testimony that migration was not to be expected under the circumstances found in this case. The an-

swer returned by the jury to Special Issue No. Eight is not so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

By Special Issue No. Ten the jury refused to find from a preponderance of the evidence that the failure of Dr. Hampton to remove both of the Harrington devices, rather than removing only a part of the right one, was negligence. Appellants' Points Ten and Eleven attack this finding. The evidence does not establish that the issue should have been answered in the affirmative. While there is testimony that there was no medical necessity for either of the rods to remain in Mrs. Weiser's body, there was testimony that, in view of the mass of scar tissue in her back resulting from previous operations, Mrs. Weiser might have had major complications from removing the left rod which was not bothering her. Dr. Hampton testified that Mrs. Weiser requested that only a part of the right rod be removed. There was no testimony that the procedure followed by Dr. Hampton failed to conform to accepted medical standards. Points Ten and Eleven do not present error.

Special Issue No. Twelve asked whether the failure of Dr. Hampton to secure x-rays of Mrs. Weiser following the surgical removal of a portion of the right Harrington metal device constituted negligence and a proximate cause of damage to Mrs. Weiser. The jury answered both issues in the negative. Points Twelve and Thirteen, directed at these findings of the jury, do not present error. Dr. Cameron took x-rays within two months after the surgery performed by Dr. Hampton. At that time Mrs. Weiser was his patient. Dr. Ehni testified that in the absence of neurological symptoms suggesting trouble he might wait for several months after he noticed that a rod had changed positions before making x-rays. Dr. Smith testified that he might never x-ray a patient after he took off the top part of a rod unless he developed symptoms indicating a neces-

sity for such a procedure. In the absence of a finding that the failure to x-ray constituted negligence, the proximate cause issue is immaterial. The mere failure to take x-rays could not constitute a proximate cause of the injury sustained as a matter of law. The jury might well have reasoned that if the doctor took x-rays soon after the operation nothing of significance would have been detected. While if he had waited six or seven weeks, it would have been too late to prevent damage. In addition there is testimony that the rod caused no injury.

In answer to the damage issue, Special Issue No. Fourteen, the jury found that the amount was nothing. Assuming that the evidence required a finding of some pecuniary damage, the error is immaterial since the jury failed to find issues to support a judgment against any of the defendants. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (1939).

■ For the reasons set out in denying the points of error previously discussed, appellants' sixteenth point is overruled. By Point No. Seventeen appellants contend that it was error for the presiding judge to overrule their motion to disregard jury findings since he was not the judge who sat at the trial. Appellants do not contend that the presiding judge is not authorized by law to sit for the trial judge in a subsequent proceeding, but contend that the error consists in having a judge not familiar with the facts pass on a motion to disregard jury findings based on a contention that the findings were supported by no evidence. While it is obvious that the judge who heard the evidence would be in a better position to pass on the motion, it would not be unreasonable to suppose that another judge would be able to do so after hearing the arguments of counsel. The point is denied. Rule 330(g), Texas Rules of Civil Procedure; Bickham v. Herrin Transp. Co., 344 S.W.2d 953 (Tex.Civ.App.—Houston, 1961).

Appellants complain of certain jury argument as being prejudicial. Appellants made no motion for a mistrial. Their objection to the argument was sustained and the jury was instructed to disregard it. While a portion of the argument was improper, it was not prejudicial. The point does not present reversible error.

■ At the conclusion of appellants' case, appellees dictated into the record a motion for instructed verdict as to Dr. Poindexter. The trial court overruled the motion at that time, stating that the matter would probably arise again at the time the charge was prepared. The record does not contain an order · sustaining the motion. The judgment states that the court instructed a verdict as to Dr. Wall and Dr. Poindexter. Appellants did not object to the motion for an instructed verdict on the ground that it was dictated to the court reporter rather than presented in writing. The failure of the appellees to present a written motion for instructed verdict cannot be error requiring reversal unless the record reveals disputed issues of fact. In the absence of disputed issues of fact the trial court should instruct a verdict on his own motion. In Re Price's Estate, 375 S.W.2d 900 (Tex.1964); Marlin Associates v. Trinity Universal Ins. Co., 226 S.W.2d 190 (Tex.Civ.App.—Dallas, 1949).

■ Dr. Poindexter was a resident doctor employed by the hospital. He was assigned to assist Dr. Hampton. He did not talk to Mrs. Weiser prior to the operations. Dr. Poindexter participated in the two operations involving the Harrington devices. Appellants contend that viewing the evidence at the time the case was submitted to the jury, there was a fact issue as to whether Dr. Poindexter had permission to assist Dr. Hampton in placing the Harrington devices in Mrs. Weiser's body and in leaving them there. Appellants requested an issue which was sufficient to call this theory to the attention of the trial court. There is no evidence of negligence

on the part of Dr. Poindexter. Wilson v. Scott, 412 S.W.2d 299 (Tex.1967).

It is undisputed that he was not personally given Mrs. Weiser's consent to participate in the operation. Mrs. Weiser was Dr. Caram's patient. Dr. Hampton was called in first by Dr. Caram to perform the stabilization procedure. Dr. Poindexter was employed by the hospital as a resident and was assigned by the hospital to assist in the surgery. He testified that the only time he "would come into a direct obligation to the patient is when the surgery is being performed improperly under the standard procedure of a medical doctor in the exercise of medical care of a patient." As an assisting surgeon all he was doing was assisting in the operation by handing the operating surgeon "sutures or whatever he is going to need in that aspect." In the absence of some "drastic surgical error" which would indicate that "the health or welfare of the patient was involved," he would not interfere with what the operating surgeon was doing, but would merely assist him. There is no evidence that he actually performed any procedure on the body of Mrs. Weiser. There is no evidence that he breached his duty to the patient. Since he was assisting the surgeons, under their direction and control, and had no independent doctor-patient relationship, he was under no duty to gain the patient's consent. The consent, if any, given to a surgeon, who is to perform an operation, by his patient, must be construed to include consent for him to secure such assistance furnished by the hospital as he may require.

Since there is no evidence that Mrs. Weiser knew that Dr. Poindexter would participate in· the operation, or that Dr. Poindexter knew that Dr. Hampton anticipated the use of the Harrington devices, the question presented by this point appears to be one of first impression. Assuming that Dr. Poindexter had the duty to secure Mrs. Weiser's consent before he could assist Dr. Hampton, the question in this case would be whether his failure to do so

was the proximate cause of injury to her. Before this question could be answered in the affirmative, it must be assumed that he was under the duty of ascertaining from the operating surgeon the procedures contemplated in order that he might secure informed consent. The duty of securing the patient's informed consent rests on the doctor treating the patient or performing the operation. The operating room personnel should not be required to anticipate that the doctor in charge of the operation would fail to secure such consent. We are not faced with the question of whether Dr. Poindexter would be liable to Mrs. Weiser for damages had the jury found that Dr. Hampton failed to secure her informed consent to the operations performed.

Point Twenty raised in appellants' brief presents no error. They complain of the action of the court in granting Dr. Caram's oral motion for instructed verdict. This motion was overruled when presented. The judgment does not reflect that it was reconsidered and sustained at a later time. Under this point in appellants' brief, it is pointed out that certain special issues were requested relating to the laminectomy. No points are presented charging the court with error in refusing these issues. However, we are of the opinion that the court did not err in refusing these issues relating to negligence and informed consent since the cause of action was barred by the two year Statute of Limitations. Appellants' Point No. 21 raises this question also and it is overruled. Coffman v. Hedrick, 437 S.W.2d 60 (Tex.Civ.App., 1st Dist. 1969, error ref., n. r. e.).

By Points 22 and 23 appellants contend that the trial court erred in refusing certain requested issues. The issues were not raised by the evidence. Hart v. Van Zandt, 399 S.W.2d 791 (Tex.1965).

■ Point 24 reads: "The Court erred in refusing plaintiffs' requested issues of whether Dr. Hampton concealed the fact of the metal rod being removed, instead of bone as being the cause of the knot, and accompanying issues of gross negligence, malice, and proximate cause, which issues were raised by the evidence and pleadings."

In argument under this point appellants say that "the above issue was followed by the questions of whether the statement constituted gross negligence, whether the statement was false, whether Mrs. Weiser sustained damages relying upon such false statement, with definition of gross negligence."

This point was not presented distinctly to the trial court by any of appellants' assignments of error as required by Rule 374 T.R.C.P. While appellants do not specify the assignment of error to which this point is germane, it appears to be based on paragraph XIII of the Motion for New Trial. This paragraph reads: "The Court erred in refusing plaintiffs requested issues of whether Dr. Hampton concealed from plaintiff the fact he intended to remove only a part of the right rod, together with the accompanying issue as to whether such statement was gross negligence, was false, and whether plaintiff sustained damages in reliance on such false statements, and in refusing the definition of gross negligence submitted in regards to such issues."

This paragraph would not direct the court to appellants' contention that Dr. Hampton advised Mrs. Weiser that "he was going to remove some artificial bone which was growing so as to cause the knot on her back." Paragraph XIII appears to refer to some purported evidence that Dr. Hampton concealed the fact that he intended to remove part of the right rod rather than the entire rod. The assignment of error, if it was in fact directed to the issues discussed under Point 24, would tend to confuse the trial court rather than to assist him in understanding the basis of the appellants' complaint as contemplated by Rule 321, T. R.C.P. Traders & General Ins. Co. v. May, 168 S.W.2d 267 (Tex.Civ.App.—Amar. 1943, ref., w. m.).

Point 24 cannot be considered on this appeal. J. Weingarten, Inc. v. Tyra, 381 S. W.2d 215 (Tex.Civ.App.—Tyler 1964); Ellen v. City of Bryan, 410 S.W.2d 463 (Tex.Civ.App.—Waco 1967, error ref., n. r. e.); Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960).

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

Appellants properly point out that we erred in stating that no motion for mistrial by reason of improper jury argument was made. The motion was properly overruled. After a review of the record as a whole we find that the argument in question did not probably cause the rendition of an improper judgment.

The motion for rehearing is denied.